IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **RAYMOND L. SHERWOOD, III et al,** ) | |
| ) | |
| ) | **Case No. 7:25-cv-821** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **By:    Michael F. Urbanski** |
| ) | **Senior United States District Judge** |
| ) | |
| **COUNTY OF BOTETOURT,** ) | |
| **VIRGINIA, et al,** ) | |

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

May 21, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ E. Jones
DEPUTY CLERK

**Defendants.**

**MEMORANDUM OPINION**

Plaintiff Raymond L. Sherwood III and his family raise twenty counts against nine different state and non-state actors in Botetourt County, including wide-ranging claims of malicious prosecution, Brady and Giglio violations, retaliation and abuse of power, equal protection violations, stigma-plus due process violations, Americans with Disabilities Act violations, violations of Section 504 of the Rehabilitation Act, Monell liability, Title IX retaliation, violation of rights to familial association, Virginia civil conspiracy, and various defamation claims. ECF No. 40.

The Sherwoods' sweeping claims appear to stem from incorrect interpretations of law and include citations to hallucinated law ostensibly obtained from generative AI tools. A fundamental misunderstanding about (1) the requirements for a misdemeanor warrant under Virginia Code § 19.2-72; and (2) the effect of a nolo contendere plea in Virginia court underlies all twenty counts.

1

Ten motions are pending before the court, including: defendants' motions to quash service of the original complaint, ECF Nos. 34, 36, 38, 41, 44; defendants' motions to dismiss for failure to state a claim, ECF Nos. 71, 76, 79, 82, 84; and plaintiffs' motion to amend their amended complaint, ECF No. 93.

The court has carefully considered the various motions of the parties, the parties' briefing on those motions, and the parties' oral arguments presented at the February 2, 2026, hearing on the pending motions. For the reasons described herein, the motions to quash are **DISMISSED AS MOOT**, the motion to amend is **DENIED**, and the motions to dismiss are **GRANTED**. This case is **DISMISSED**.

## I.      Factual Background

Plaintiff Raymond Sherwood is a disabled veteran and former police officer who worked as a school bus driver in Botetourt County. ECF No. 40 at 8-9. This case arises from the circumstances surrounding Sherwood's 2025 arrest for assault and battery and his termination from his position as a bus driver for the Botetourt County School District.

**Sherwood's Arrest**

In May 2025, Sherwood was arrested and charged with twenty-five counts of assault and battery arising from his contacts with children on the school bus between April 15-22, 2025. Id. at 9, 14, 17. These contacts had been reported in April 2025 by the mother of one

of those children, defendant Kasey Thomas, who works as a probation officer in Botetourt County. Id. at 14-16.[1]

In the complaint, Sherwood objects to the circumstances surrounding his arrest. On the day of his arrest, Sherwood received two phone calls from police officers, one asking to speak with him and the other "delivering a seemingly informal, conversational 'heads up' to induce [Sherwood] to appear at the jail voluntarily." Id. at 29. The Sherwoods allege that these circumstances amounted to a manipulation to "orchestrate a warrantless, no-probable-cause arrest while making it appear 'voluntary.'" Id. at 28. "Relying on his own background in law enforcement and his belief that he had done nothing wrong, Mr. Sherwood complied and presented himself at the jail shortly thereafter." Id. at 29. Plaintiffs also allege that Botetourt County (another defendant) regularly routes deputy-initiated calls through the Emergency Communications Center in order to create the impression that the accused "came in voluntarily." Id. at 30.

Plaintiffs allege that there were various issues with the way Sherwood's arrest was conducted. The arresting officer, Lieutenant Kevin Hix, and Assistant Commonwealth's Attorney Marshall Lukacs are named defendants in this case. Id. at 17. The Sherwoods allege that, under orders from Lukacs to "bring a charge for each contact made," Hix obtained all twenty-five warrants for Sherwood's arrest without a sworn affidavit or recorded probable cause statement. Id. Hix conducted a full custodial arrest of Sherwood, rather than issuing a

---

[1] There is allegedly footage of these contacts, and the parties disagree on what that footage shows. See, e.g. ECF No. 40 at 17 ("Upon information and belief, surveillance footage reviewed that week showed no criminal conduct, no intimate touching, and no behavior suggesting sexual intent.").

3

summons. Id. The Sherwoods also allege that the time of execution that was written on the warrants (5:03 p.m.) was at least an hour before Sherwood voluntarily came to the jail, and that "Sherwood—who requires ADA accommodations—was afforded none of the customary modifications to the arrest procedure," which imperiled his safety. Id. at 31-32. Plaintiffs allege that standard booking process—specifically, the documentation of any identifying marks— was not followed, and that Sherwood's three-hour custodial booking aggravated his disabilities. Id. at 31-33. In September 2025, months after Sherwood's arrest, the Department of Veteran's Affairs issued a "100 percent permanent and total" rating based on his "documented sensory and cognitive limitations and other conditions that were aggravated by the arrest, booking, and public shaming." Id. at 33.

Sherwood County Sheriff's Office posted about the arrest on its Facebook page on May 6, 2025. That post indicated that Sherwood had been arrested for twenty-five counts of alleged misconduct as a school bus driver, that the alleged touching "did not involve intimate areas[.]" Id. at 18. The Sheriff's Office also made public comments on May 7, 2025, advising that the conduct "involved 'more than one student'" and rejecting community explanations that the alleged conduct consisted of "hugs and high fives." Id. at 18-19. Sherwood alleges that defendant Botetourt County School Board ("School Board") approved the Sheriff's Office press release. Id. at 19, 23, 28.

Notably, under Virginia Code § 19.2-72, a probable-cause affidavit is not required for a misdemeanor warrant in Virginia when the complainant is a law enforcement officer. Va. Code § 19.2-72. Nonetheless, between July 2025 and September 2025, Sherwood's criminal

defense counsel[2] "repeatedly requested that the Commonwealth's Attorney's Office produce the affidavits supporting the twenty-five arrests and other exculpatory court-ordered materials." ECF No. 40 at 26. Neither A.C.A. Lukacs, Botetourt County Commonwealth's Attorney John Alexander (another defendant in this suit), the Juvenile and Domestic Relations District Court, nor the Office of the Executive Secretary of the Supreme Court of Virginia provided the Sherwoods with a sworn probable-cause affidavit relating to the twenty-five charges. Id. at 26-27.

**Sherwood's Termination**

Shortly after his arrest, Sherwood lost his job as a bus driver for Botetourt County Public Schools.

The Sherwoods allege irregularities with Sherwood's termination, including a "series of concealed, procedurally irregular, and unlawfully adopted policy provisions" at the School Board "[b]etween April 4 and April 11, 2025, immediately preceding the allegations against [] Sherwood and directly coinciding with … his suspension and termination." Id. at 19. Twenty-two policy provisions that relate to "third-party complaints about employees, student conduct on school buses, bus-stop procedures, transportation oversight, staff hiring, and investigative responsibilities" were presented at the board's April 10, 2025, meeting with little notice to the public. Id. at 19-20. Those changes were also suggested in one large omnibus PDF file, rather than in separate motions, allegedly in violation of School Board policy. Id. at 20-21.

---

[2] The court notes that Sherwood's criminal defense counsel from his state misdemeanor case, Joseph Cockfield, is a different attorney from his counsel in this civil case, Jon Clark.

The Sherwoods allege that these large policy changes "coincided with significant budget and staffing procedures," and "[r]emoving a popular but protected, 100 percent disabled veteran driver would have provided budgetary relief that the School Board appeared increasingly motivated to achieve." Id. at 21-22. The Sherwoods highlight that Sherwood "was widely beloved in his community" and that this made his "termination politically dangerous for the School Board unless it could be framed as necessary for policy." Id. at 22.

Sherwood was notified by the School Board that he was suspended from his employment on April 23, 2025, "without … any written notice of allegations or procedural rights" and was banned from campus (except when attending events for his children, who are students there). Id. at 22-23.

Weeks later, on May 2, 2025, defendant Timothy McClung, the School District's Human Resources Director and Title IX supervisor, wrote Sherwood a letter indicating that he was "recommending to the Botetourt County School Board that [Sherwood's] employment as Bus Driver be terminated effective May 2, 2025," and that "[t]his recommendation is due to unprofessionalism when it comes to your interaction with female students on the school bus." ECF No. 2-2 (cited at ECF No. 40 at 23, 72, 99, and 103). The letter informed Sherwood of his ability to file a request for a hearing with the Office of the Superintendent and attached the School Board's policy that outlined his rights and the grievance process. Id. A second letter from McClung, dated May 9, 2025, confirmed that the School Board voted on May 8, 2025, in regular session to terminate Sherwood's employment as "the result of unprofessionalism when it comes to your interaction with female students on the school bus." ECF No. 2-3 (cited at ECF No. 40 at 23).

6

In the amended complaint, the Sherwoods allege that, McClung "failed to provide Mr. Sherwood with written notice of allegations, failed to initiate any formal Title IX process, failed to implement supportive measures, and failed to conduct an investigation." ECF No. 40 at 22. His action was ultra vires, plaintiffs allege, because "only the Superintendent may recommend termination under Va. Code § 22.1-315." Id. at 23.[3]

The amended complaint alleges that McClung said that Sherwood "talked to girls more than boys" and that his suspension was due to "unprofessionalism," in apparent conflict with contemporaneous statements from the Sheriff's Office. ECF No. 40 at 22. The Sherwoods also allege irregularities in the ways the School Board handles student records "in matters such as Mr. Sherwood's." Id. at 34-35.

The Botetourt County School Board voted to terminate Sherwood from his position on May 7 or May 8, 2025, allegedly in reliance on the statements from the Sheriff's Office, "within his ten-day appeal window, without giving him any opportunity to respond, without disclosing the allegations, and without providing any name-clearing hearing." Id. at 18-19; 23. Sherwood was officially terminated as of June 30, 2025, at the end of the fiscal year. Id. at 24. He alleges that he and his family never received a COBRA notice advising them of a right to continue their health insurance coverage, and Sherwood stopped receiving hourly pay in May 2025. Id. at 24.

**Sherwood's Nolo Contendere Plea**

Prosecutors extended a formal offer of a plea agreement to Sherwood in October 2025. The amended complaint describes the agreement as follows:

---

[3] The court notes that this assertion is not supported by the language of the statute.

> [T]he Commonwealth would agree to defer two (2) of the twenty-five (25) misdemeanor assault and battery charges while dismissing by <u>nolle prosequi</u>[] the remaining twenty-three (23). Pursuant to the agreement, the two deferred charges were taken under judicial advisement on the condition that Mr. Sherwood enter pleas of <u>nolo contendere</u> (no contest) to each. In exchange, the Juvenile & Domestic Relations Court made no finding of guilt and no finding of facts sufficient to convict, with both charges to be dismissed and eligible for expungement upon Mr. Sherwood's compliance with the agreed conditions—specifically, that he have no contact with the complainants, keep the peace, and remain on good behavior.

ECF No. 40 at 56 (citing ECF No. 2-23).

The Sherwoods allege that "Mr. Sherwood accepted the Commonwealth's offer" on October 14, 2025, "not because [Sherwood] was guilty, but because the Sheriff's Office's public accusations had rendered him unemployable." <u>Id.</u> at 25. Sherwood entered the <u>nolo contendere</u> plea with the Juvenile & Domestic Relations Court. <u>Id.</u> at 56.

In October 2025, Botetourt County Commonwealth's Attorney John Alexander made public statements to the press about the case. He indicated that Sherwood's conduct included "touching that verged on inappropriate," that "there was no evidence to support charges of sexual assault," and that the fact that Sherwood was no longer working as a bus driver was accounted into Sherwood's plea agreement. <u>Id.</u> at 56 (citing ECF Nos. 2-31, 2-32). Alexander refused to retract those statements after he was contacted by Sherwood's defense counsel. <u>Id.</u> at 57.

## II.   <u>Procedural Background</u>

Plaintiff Raymond Sherwood and his family filed a complaint, ECF No. 1, and a motion for an <u>ex parte</u> Temporary Restraining Order and Preliminary Injunction, ECF No. 4, on November 17, 2025. The original complaint in this case was 93 pages long and includes sixteen claims. ECF No. 1. The motion for a temporary restraining order sought extensive equitable

relief, including orders enjoining state prosecutors from engaging with Sherwood's criminal case and gag orders against the School Board, the Commonwealth's Attorney's Office, the Sheriff's Office, and Defendant McClung. ECF No. 4. Court denied the request for an ex parte TRO and set a hearing date on the Preliminary Injunction for February 2, 2026. ECF No. 47.

On December 10, 2025, defendants filed motions to quash the original complaint alleging that service of the original complaint had not complied with Federal Rule of Civil Procedure 4, ECF Nos. 34, 36, 38, 41, 44.[4] That same day, plaintiffs filed an amended complaint. ECF No. 40. The amended complaint was 133 pages long and included twenty counts against defendants. Id. The parties do not dispute that the amended complaint was properly served.

Defendants have since filed motions to dismiss those various counts for failure to state a claim. ECF Nos. 71, 76, 79, 82, 84. Those motions allege that the Sherwoods' amended complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).[5] Troublingly, several of those motions to dismiss highlighted that the amended complaint relied on statutes and case law that do not exist. ECF No. 83 at 2, 8; ECF No. 85 at 4-5.

Counsel for the Sherwood family, Jon Clark, received a Rule 11 warning from defense counsel. ECF No. 95 at 3. The Sherwoods since moved to amend their complaint. ECF No. 93. The proposed second amended complaint removes direct references to the nonexistent statute and law, but maintains the same arguments. ECF No. 93-1. Around the same time, the

---

[4] ECF No. 44 was filed the following day, on December 11, 2025.
[5] The motions to dismiss do not address Count XX, the Sherwood's RICO placeholder claim. ECF No. 40 at 128.

Sherwoods moved to amend their motion for a temporary restraining order and preliminary injunction to seek far more limited relief, in the form of an order that a May 6, 2025, Facebook post from the Botetourt County Sheriff's Office be removed. ECF No. 95. Plaintiffs then notified the court of their withdrawal of the TRO on February 1, 2026, one day before the court was scheduled to hear argument on all pending motions. ECF No. 113.

The court heard oral argument on the various pending motions on February 2, 2026.

### III.   Motion for Temporary Restraining Order

Plaintiffs withdrew their motion for a temporary restraining order, ECF No. 4, on February 1, 2026. ECF No. 113. [6] It is **DISMISSED**.

### IV.   Motions to Quash

Under Federal Rule of Civil Procedure 15(a)(1)(A), "[a] party may amend its pleading once as a matter of course" within 21 days of serving it. The original complaint was allegedly served on November 19-20, 2025, ECF Nos. 19-29, though defendants argue that this service did not comport with the requirements of Federal Rule of Civil Procedure 4. ECF Nos. 34, 36, 38, 41, 44. The amended complaint was filed on December 10, 2025, 21 days after the alleged service on November 19, 2025. ECF No. 40. Plaintiffs amended their complaint as of right, in accordance with the federal rules. The parties do not dispute that the amended complaint was properly served. Therefore, the amended complaint, ECF No. 40, is the

---

[6] The court notes that the parties had submitted thorough briefing on the motion before it was withdrawn, including after plaintiffs significantly modified the motion. See, e.g. ECF Nos. 86, 91, 107. Defendants' counsel indicated at the February 2, 2026, hearing that significant time had been spent preparing briefs and oral argument on that issue.

operative complaint in these proceedings. The motions to quash the original complaint, ECF Nos. 34, 36, 38, 41, and 44 are **DISMISSED AS MOOT.**

## V.    Motion to Amend

Plaintiffs' amended complaint, ECF No. 40, contains a concerning number of false quotations, nonexistent cases, and misstatements of law.

For example, the amended complaint includes citations to Virginia Code § 19.2-72 throughout for the proposition that the misdemeanor warrants in his case required a sworn affidavit or written probable cause statements. ECF No. 40 at 17, 27, 32, 37, 38, 40, 42, 43, 46, 71, 93, 95, 96, 110. Virginia Code § 19.2-72 does not require sworn affidavit or written probable cause statements for misdemeanor offenses where the complainant is a law enforcement officer. The statute reads, in relevant part:

> On complaint of a criminal offense to any officer authorized to issue criminal warrants he shall examine on oath the complainant and any other witnesses, or when such officer shall suspect that an offense punishable otherwise than by a fine has been committed he may, without formal complaint, issue a summons for witnesses and shall examine such witnesses. <u>A written complaint shall be required if the complainant is not a law-enforcement officer</u>; however, a written complaint is required for a felony offense, regardless of whether the complainant is a law-enforcement officer.

Va. Code § 19.2-72. (emphasis added).

When the court asked plaintiff's counsel at the February 2, 2026, hearing about the source of this assertion, counsel had no satisfactory answer.[7]

---

[7] It appears that plaintiffs' counsel has misquoted this section of the Virginia Code to the Virginia Juvenile & Domestic Relations District Court. ECF No. 2-24 at 1, which he attached to the original complaint. In that letter, Mr. Clark asserts:

> Section 19.2-72 provides: No magistrate shall issue a warrant unless he shall have received a complaint of some person under oath either reduced to writing and signed by the

The amended complaint also cites to cases that do not exist, including: "Peal v. Commonwealth, 26 Va. App. 505 (1998)" (cited in ECF No. 40 at 39, 40, 43, 44, 95)[8]; "Ford v. City of Alexandria, 37 Va. App. 819 (2002)" (cited in ECF No. 40 at 40, 43); "Lafayette v. Commonwealth, 30 Va. App. 454 (1999)" (cited in ECF No. 40 at 43, 44); "Walker v. Bowen, 372 F. Supp. 2d 541 (W.D. Va. 2005)" (cited in ECF 40 at 50). At the February 2, 2026, hearing on the pending motions in this case, the court asked plaintiffs' counsel where he found those cases. Counsel had no satisfactory answer.

Importantly, plaintiffs cite to these cases (except Walker) to argue that the alleged § 19.2-72 "sworn oath or affidavit" requirement is "jurisdictional, not procedural" or "technical." Id. at 39, 43. References to this "foundational" requirement, supported by fictional case law, pervade the amended complaint, even where the cases are not directly cited. See, e.g. id. at 9 (alleging an "invalid foundation,"); 47 ("the Commonwealth withheld not merely discoverable Brady material, but the foundational jurisdictional record required to support the charges in the first place"); 62 ("denied access to their foundational probable-cause materials"), et al.

Third, the amended complaint cites cases that do exist, but for the wrong proposition. Those are misstatements of law. As an example, McCary v. Commonwealth, 228 Va. 219, 231 (1984) is a real citation, but Sherwoods' parenthetical ("Probable cause must appear within the

---

complainant or recorded by the magistrate and preserved by some mechanical or electronic recording device.

ECF Nos. 83 at 2; 1-24 (Plaintiff's Exhibit V). That quote does not appear in the Virginia Code. Though the complaints that plaintiffs' counsel have filed in this case do not directly quote this imaginary statute again, they do reflect the premise that defendants failed to adhere to this fictional requirement.

[8] "Peal v. Commonwealth, 26 Va. App. 44 (1997)," cited at ECF No. 40 page 95, also does not exist.

12

four corners of the written affidavit or recorded testimony presented to the magistrate[,]")

appears nowhere in that opinion. ECF No. 40 at 39-40. Similar misstatements of law can be

found in plaintiffs' citation to "Anderson v. Commonwealth, 38 Va. App. 321 (2002), aff'd,

279 Va. 85 (2010)," which was cited for the proposition that "in camera review [is required]

once materiality is asserted." ECF No. 40 at 44. 38 Va. App. 321 (2002) is the citation for

Thomas v. Commonwealth, a different case. Thomas does not support the assertion that "in

camera review is required once materiality is asserted." ECF No. 40 at 44. See Thomas, 38 Va.

App. 321. Assuming that plaintiffs' counsel mistyped, and that they meant to cite to Anderson

v. Commonwealth, No. 2182-07-2, 2009 WL 668791 (Va. Ct. App. Mar. 17, 2009), the court

notes Anderson does not support that assertion either.[9]

The same is true for other citations in the amended complaint. For example, plaintiffs'

counsel cites both Franks v. Delaware, 438 U.S. 154, 165 (1978), and Whiteley v. Warden, 401

U.S. 560 (1971), for the proposition that "[a]bsent an oath or affirmation, each warrant was

void ab initio under both state and federal law." ECF No. 40 at 38. Neither of these cases

involved a situation where a court considered a warrant unsupported by a written oath or

affirmation.[10] More examples abound, and the frequency of these errors suggests that they are

more than a mere scrivener's error.

---

[9] There are cases that counsel could have cited for this proposition. See, e.g. United States v. Trevino, 89 F.3d 187, 190 (4th Cir. 1996)("Once the accused has made a plausible showing that the evidence would be both material and favorable, the trial court must review the information in camera to ascertain its true nature and determine whether it must be disclosed.")(citing Pennsylvania v. Ritchie, 480 U.S. 39, 58-60 (1987); Love v. Johnson, 57 F.3d 1305, 1313 (4th Cir. 1995)). The court cannot account for Plaintiff's counsel's choice to cite to a non-existent case instead, beyond the use of generative AI.

[10] Franks held that, under the Fourth Amendment, a defendant is entitled to a hearing if he makes a substantial preliminary showing that an affiant knowingly and intentionally (or with false disregard for the truth) made a false statement in a search warrant affidavit, and that false statement is necessary to establish probable cause. Franks, 438 U.S. at 154. Here, Plaintiff does not request a Franks hearing, and regardless, Franks discussed false statements in affidavits, not the absence of an oath or affirmation. Whiteley discussed the sufficiency of

Defendants alerted the court and plaintiffs to these false citations in their motions to dismiss. ECF Nos. 83 at 1-2, 8; 85 at 4-5. Having received notice that their complaint relied on non-existent law, plaintiffs moved to file a second amended complaint. ECF No. 93 at 1. As plaintiff states it:

> Following the Amended complaint, issues were raised regarding the framing and scope of certain allegations … Plaintiffs now seek leave under Rule 15(a)(2) to file the attached Second Amended Complaint so that the operative pleading reflects additional clarification and refinement undertaken after continued review of the governing law and factual record.

Id. (referencing ECF No. 93-1).

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).

Leave to amend is typically denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)(citing Foman, 371 U.S. at 182). Other reasons to deny leave to amend include "undue delay…and that the party has previously amended the relevant pleading." Tech. & Intell. Prop. Strategies Grp. PC v. Fthenakis, No. C 11-2373 MEJ, 2012 WL 159585, at *2 (N.D. Cal. Jan.

---

evidence to establish probable cause for a warrantless search, not the absence of an oath or affirmation used to support a warrant. Whiteley, 401 U.S. at 560.

17, 2012). In the Fourth Circuit, "delay alone is not sufficient reason to deny leave to amend…[t]he delay must also be accompanied by prejudice, bad faith, or futility." Johnson, 785 F.2d at 509-510 (citing Davis v. Piper Aircraft Co., 615 F.2d 606, 613 (4th Cir.1980), cert. dismissed, 448 U.S. 911 (1980); United States v. Webb, 655 F.2d 977, 980 (9th Cir.1981); Buder v. Merrill Lynch, Pierce, Fenner & Smith, 644 F.2d 690, 694–95 (8th Cir.1981); Cornell & Co. v. Occupational Safety & Health Comm'n, 573 F.2d 820, 823 (3d Cir.1978)).

Importantly, a motion to amend should be denied when sought in "bad faith," which the Fourth Circuit agrees can be hard to define:

> A few words on bad faith. We cannot provide a comprehensive definition of a term like bad faith; in truth, it is a difficult term to define without retreating to circular reasoning or just listing examples. See Constance A. Anastopoulo, Bad Faith: Building a House of Straw, Sticks, or Bricks, 42 U. Mem. L. Rev. 687, 696 (2012) (explaining how, in the insurance context, courts often describe "bad faith" as the opposite of "good faith"); Kenneth S. Abraham & Daniel Schwarcz, Insurance Law & Regulation 91–92 (6th ed. 2015) ("It is extremely difficult to specify the kind of behavior that triggers the bad faith cause of action.... [I]t may be that each case requires a judgment in context."). As the Restatement (Second) of Contracts says, "a complete catalogue of types of bad faith is impossible." § 205 cmt. d (Am. Law Inst. 1981); but see Liquid Dynamics Corp. v. Vaughan Co., 449 F.3d 1209, 1225 (Fed. Cir. 2006) (offering a nine-factor test to determine whether a patent infringer was operating in bad faith).
>
> Black's Law Dictionary defines "bad faith" as "[d]ishonesty of belief or purpose." Bad Faith, Black's Law Dictionary (8th ed. 2004). To act with a dishonesty of purpose is to act for the wrong reasons. It may be outright lying, deceiving, playing unjustifiable hardball, slacking off, intentionally causing confusion, or stubbornly refusing to follow rules—you can imagine cases where a party just wants to cause chaos—or it might be something as mundane as noticing someone's mistake and saying nothing about it. See Restatement (Third) of Restitution and Unjust Enrichment § 52 cmt. c & illus. 3 (Am. Law Inst. 2011). In the contract context, courts have found bad faith for "evasion of the spirit of the bargain, lack of diligence ..., willful rendering of imperfect performance, abuse of a power ..., and interference ... or failure to cooperate." Restatement (Second) of Contracts § 205 cmt. d. We could go on, but this sketch of the contours of this many-faceted concept suffices here.

15

United States ex rel. Nicholson v. MedCom Carolinas, Inc., 42 F.4th 185, 198 (4th Cir. 2022). See ECF No. 106 at 5 (highlighting this language).

Plaintiffs seek the court's leave to file a second amended complaint under FRCP 15(a)(2). ECF No. 93. They seek to file this Second Amended Complaint "so that the operative pleading reflects additional clarification and refinement undertaken after continued review of the governing law and factual record." ECF No. 93 at 1. Plaintiffs emphasize that the amendment "clarifies and refines existing allegations and legal theories and incorporates additional factual allegations developed through continued investigation and review of available record materials." They insist that "[t]he amendment is not sought in bad faith, does not cause undue delay, and is not futile." Id. at 3.

The court's analysis of the proposed second amended complaint reveals that, while plaintiffs removed direct references to nonexistent laws, the complaint still includes arguments that hinge on the premises of those made-up laws. For example, in the proposed second amended complaint, Plaintiffs still argue that the twenty-five arrest warrants for Mr. Sherwood were obtained with "no written probable-cause affidavit[,]" ECF No. 93-1 ¶ 32, and that prosecution produced no "written or electronic statements or recordings reflecting the probable-cause basis for the warrants[,]" Id. ¶ 68. These are remnants of the pleading containing nonexistent language in Virginia Code § 19.2-72 and fictitious cases. As noted, § 19.2-72 does not require a written affidavit or complaint under these circumstances (i.e. for a misdemeanor, where the complainant is a law enforcement officer).

These same arguments come up in the amended Count I, where plaintiffs again misquote the law to reflect a foundational requirement for additional sworn probable cause

16

materials. Id. at 28-29.[11] This is also true for: Count II, id. at 33-35 (reference to there being no "written or recorded materials reflecting the sworn factual basis presented in support of the arrest warrants"); Count III, id. at 37-38 (same); Count IV, id. at 43-44 (alleging the absence of "probable cause materials"); Count V), id. at 51 (alleging that Sherwood's equal protection rights were violated because "no written or recorded sworn probable-cause materials have been identified or produced in the court file,") 56 ("no sworn probable-cause foundation has been identified or produced"); Count VI, id., at 61 (referencing defense counsel Joseph Cockfield's attempts to retrieve probable-cause documentation, here framed as "clarification and case-related information"); Count XI, id. at 89-90 (alleging that "Plaintiffs were not provided any preserved sworn probable-cause narrative or supporting documentation,"); Count XVI (representing that the lack additional probable-cause documentation was evidence of "a misuse of criminal process"), id. at 121. This is a non-exhaustive list.

In the Fourth Circuit, courts do not grant leave to amend when the amendment is sought in bad faith. Here, plaintiffs' counsel was made aware that he had included false statements of law and nonexistent cases in the pleadings. See ECF No. 83 at 2, 8, ECF No. 84 at 4-5. In response, counsel merely removed direct references to the false statements of law and non-existent cases that were cited in the amended complaint, but he has not removed the legal arguments that depend on those made-up laws. ECF No. 93-1, see infra.

---

[11] The numbering scheme for paragraphs in the proposed second amended complaint restarts on page 28. For the first iteration of those paragraphs, a paragraph (¶) citation is used. After page 28, when the paragraph numbers repeat, this memorandum opinion refers to the appropriate page number.

17

The proposed second amended complaint does not further clarify or refine. Continuing to use the premises of false law and fake cases is undoubtedly bad faith.[12] Plaintiffs' motion for leave to amend, ECF No. 93, is **DENIED.**

## VI.    Motions to Dismiss

Because the court denies the motion to amend, plaintiffs' first amended complaint is the operative pleading in this case. ECF No. 40.

The Sherwood family raises twenty claims in their amended complaint, including: 42 U.S.C. § 1983 malicious prosecution and unlawful seizure claims against Lieutenant Hix and

---

[12] In the February 2, 2026 hearing on these motions, the court asked plaintiffs' counsel about these non-existent cases and law. The court repeatedly asked counsel where these citations came from. Counsel had no satisfactory answer. The court also asked counsel if these citations came from an AI tool. Counsel had no satisfactory answer.

The court notes that U.S. District Courts around the country have imposed Rule 11 sanctions and other disciplinary action on attorneys who submit legal arguments involving fictitious cases and imaginary statutes, particularly when those errors come from an attorney's improper use of AI tools. See, e.g., Bevins v. Colgate-Palmolive Co., No. CV 25-576, 2025 WL 1085695, at *7 (E.D. Pa. Apr. 10, 2025); United States v. Hayes, 763 F. Supp. 3d 1054, 1073 (E.D. Cal. 2025); Benjamin v. Costco Wholesale Corp., 779 F.Supp.3d 341, 351 (E.D.N.Y. 2025). Although AI offers potential benefits to the legal profession, it "poses legal and ethical issues for both attorneys and courts" because it lacks the "professional experience and judgment that attorneys are hired to provide." Benjamin, 779 F.Supp.3d at 342. Notably, AI can hallucinate entire case (and statute) citations and quotations contained therein.

Courts confronted with such hallucinations have recognized that "[m]any harms flow from the submission of fake opinions." Gordon v. Wells Fargo Bank N.A. Inc., No. 5:24-CV-388 (CAR), 2025 WL 1057211, at *3 (M.D. Ga. Apr. 8, 2025). First and foremost, an attorney who submits filings to the Court including un-reviewed hallucinated citations fails to conduct an inquiry reasonable under the circumstances to ensure that their claims or arguments have merits, as required by Rule 11. See Park v. Kim, 91 F.4th 610, 615 (2d Cir. 2024) ("At the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely. Indeed, we can think of no other way to ensure that the arguments made based on those authorities are warranted by existing law . . . or otherwise 'legally tenable.'").

An attorney must, at the very least, ensure that their cited authorities exist. Such a failure to comply with Rule 11 deprives the client of competent representation and wastes the Court's and opposing party's time and resources. Moreover, it threatens "potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct," "promotes cynicism about the legal profession and the American judicial system", and may tempt future litigants to "defy a judicial ruling by disingenuously claiming doubt about its authenticity." Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023).

Sheriff Ward in their individual capacities (Count I), and against Assistant Commonwealth's Attorney Marshall Lukacs in her individual capacity (Count II); 42 U.S.C. § 1983 Brady/Giglio claims against A.C.A. Lukacs in her individual capacity (Count III); 42 U.S.C. § 1983 retaliation and abuse of power claims against A.C.A. Lukacs and Commonwealth's Attorney John Alexander, in their individual capacities (Count IV); 42 U.S.C. § 1983 Equal Protection claims as a class of one against Botetourt County, and against Ward, Hix, Lukacs, Alexander and Sergeant William G. Bentley, in their individual capacities (Count V); 42 U.S.C. § 1983 "stigma-plus" due process claim against Ward, Bentley, Alexander, Lukacs, Timothy McClung, and the Botetourt County School Board "in their respective individual---or municipal—capacities" (Count VI); Title II disability discrimination claims under the Americans with Disabilities Act against the County and Sheriff Ward in his official capacity (Count VII) and against the County and the School Board (Count IX); disability discrimination claims under Section 504 of the Rehabilitation Act against the County and Sheriff Ward in his official capacity (Count VIII) and against the County and the School Board (Count IX); a separate municipal (Monell) liability claim against the County and the School Board (Count XI); Title IX retaliation and sex-based discrimination claims against the School Board and McClung (Count XII); 42 U.S.C. § 1983 claims of a violation of the Sherwood family's Fourteenth Amendments rights to familial association against Hix, Ward, Bentley, Lukacs, and Alexander in their individual capacities, and against the County and the School Board as municipal entities (Count XIII); civil conspiracy claims under Virginia Code §§ 18.2-499 and 500 against Thomas, Hix, Ward, Bentley, Lukacs, and Alexander, in their individual capacities (Count XIV); Bowman claims against the School Board (Count XV); abuse of process claims against Lukacs, Alexander,

19

Ward, and Hix in their individual capacities (Count XVI); defamation per se and by implication claims against Thomas (Count XVII), Ward and Bentley (Count XVIII), and Alexander (XIX); and a Civil RICO claim (Count XX). ECF No. 40 at 37-128.[13]

Defendants have raised several motions to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF Nos. 71, 76, 79, 82, 84. Those motions seek review under Federal Rule of Civil Procedure 12(b)(6) for nineteen of the twenty counts in the Sherwoods' amended complaint.[14] For the reasons explained herein, the court **GRANTS** those motions to dismiss.

### A.    12(b)(6) Standard

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the

---

[13] The Sherwoods ask for extensive relief. They request compensatory damages, and a "clear and unequivocal message that constitutional and statutory limits bind all government actors" and that "the law applies equally to those sworn to enforce it." They also seek punitive damages, a declaration of constitutional violations, $40 million dollars as "monetary reward." On Count IV, the Sherwoods seek "$40 million in compensatory damages, to be trebled pursuant to Va. Code § 18.2-500." They also seek "Declaratory and Injunctive Relief (Temporary, Preliminary, and Permanent)", a permanent injunction on all proceedings "predicated upon the same unconstitutional acts," temporary and preliminary injunctions "preserving the evidentiary record, prohibiting further extrajudicial statements or retaliatory conduct towards Plaintiffs or their counsel", removal of problematic statements, "such equitable relief as necessary to restore Plaintiffs' liberty, employment eligibility, and reputational standing" including pay, further declaratory relief, costs and fees, and whatever else the court thinks appropriate. Id. at 129-132.

[14] The outlier is Count XX, the Sherwoods' claim "expressly reserv[ing] the right to amend this Complaint to assert additional causes of action under the Racketeer Influenced and Corrupt Organizations Act ('RICO'), 18 U.S.C. §§ 1961–1968." ECF No. 40 at 128.

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In evaluating a motion to dismiss under Rule 12(b)(6), a court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017).

### B.    Prosecutorial Misconduct Claims (Counts I, II, III, IV)

In Counts I-IV, the Sherwoods allege multiple forms of prosecutorial misconduct in Mr. Sherwood's criminal case under 42 U.S.C. § 1983. These Section 1983 claims are alleged not only on behalf of Raymond Sherwood III, but also on behalf of his family—plaintiffs Lauren Sherwood, Savannah Beckner, and minor children B.B. and H.B.

"To prevail on a claim pursuant to § 1983, a plaintiff must allege that (1) the defendant 'deprived him of a right secured by the Constitution of the United States' and (2) 'any such deprivation was achieved under color of state law.'" Univ. Gardens Apartments Joint Venture v. Johnson, 419 F. Supp. 2d 733, 738 (D. Md. 2006)(quoting Paul v. Davis, 424 U.S. 693, 696-97 (1976)). Importantly, "a § 1983 action is personal to the direct victim of an alleged constitutional violation." Ransome v. Leach, No. 7:08CV00403, 2008 WL 3850220, at *3 (W.D. Va. Aug. 15, 2008)(citing Claybrook v. Birchwell, 199 F.3d 350, 357 (6th Cir. 2000)). "Accordingly, a Section 1983 plaintiff, like any person who claims a deprivation of constitutional or federally-protected rights, must allege some violation of his or her personal rights – not those of another." Midgett v. Cooper, No. 1:20-CV-00941, 2021 WL 4973634, at *3 (M.D.N.C. Oct. 26, 2021)(citing English v. Powell, 592 F.2d 727 (4th Cir. 1979)(wife had no standing to maintain action arising from husband's demotion on job); Dohaish v. Tooley,

670 F.2d 934 (10th Cir. 1982)). "[T]he Fourth Circuit does not recognize a cause of action arising from 'governmental actions affecting the family only incidentally.' … This accords with the holdings of other circuits." Id. (collecting cases).

Each of the Section 1983 claims in this case arising from Sherwood's criminal case are personal to Mr. Sherwood alone. Plaintiffs Lauren Sherwood, Savannah Beckner, and minor children B.B. and H.B. lack standing to bring the § 1983 claims alleged in Counts I, II, III, and IV. Therefore, the motions to dismiss Counts I, II, III, and IV are **GRANTED** with respect to plaintiffs Lauren Sherwood, Savannah Beckner, and minor children B.B. and H.B., and those claims are dismissed.

The court also dismisses Sherwood's claims related to his ongoing state criminal proceedings, including Counts I, II, III, and IV. Generally, federal courts abstain from actions interfering with state criminal prosecutions out of the principles of comity and federalism. Younger v. Harris, 401 U.S. 37, 44 (1971). Sherwood seeks a permanent injunction against further action "in that proceeding or any derivative proceeding predicated upon the same unconstitutional acts[.]" ECF No. 40 at 131. Importantly, Sherwood's state criminal case is still pending before the Juvenile & Domestic Relations Court. Id. at 56; ECF No. 2-23 (Plea Agreement).

As alleged in the complaint and its exhibits, Sherwood pled no contest ("nolo contendere") to two of the charges brought against him, and the Commonwealth moved the court to enter an order of nolle prosequi on the remaining twenty-three charges. The two charges that Sherwood did not contest were taken under advisement as a deferred disposition, under Virginia Code § 19.2-298.02, for twelve months – until October 20, 2026. ECF No. 2-

22

23 at 5-8.[15] Deferred disposition in a criminal case under Virginia Code § 19.2-298.02 "defer[s] proceedings, defer[s] entry of a conviction order, … or defer[s] entry of a final order, and continue[s] a case for final disposition." Va. Code § 19.2-298.02(A). It is not in itself a final disposition of a case, which "may include (a) conviction of the original charge, (b) conviction of an alternative charge, or (c) dismissal of the proceedings." Id. Such "deferred disposition was not a final, appealable judgment under Virginia law." Jennell v. United States, No. CIV.A. 7:05-CV-0043, 2006 WL 1519949, at *7 (W.D. Va. May 30, 2006) (citing Randolph v. Commonwealth, 45 Va. App. 166, 609 S.E.2d 84, 87-88 (Va. App. 2005)).

To be sure, "when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions." Younger, 401 U.S. at 45 (citing Ex Parte Young, 209 U.S. 123 (1908)). Here, Sherwood has not alleged facts to support a finding that such "extraordinary circumstances" exist where a ruling on these claims would prevent a "great and immediate" threat of "irreparable loss." Id.

"[W]hen a district court abstains from a case based on Younger, it should typically dismiss the case with prejudice, not on the merits." Nivens v. Gilchrist, 444 F.3d 237, 247 (4th Cir. 2006). See also Lui v. Comm'n of Adult Entm't of Del., 369 F.3d 319, 327 (3d Cir. 2004)

---

[15] At times throughout his briefing and at oral argument, Sherwood argues that the court should disregard arguments based on the exhibits attached to his original complaint at ECF No. 2, because the amended complaint at ECF No. 40 is the operative pleading in this case. See, e.g. ECF No. 75 at 2. However, the court "may consider certain exhibits attached to the original complaint that are 'integral to and explicitly relied on in the amended complaint,' and whose authenticity is not challenged." Epps v. Fair Collections & Outsourcing, Inc., No. 7:20-cv-00176, 2021 WL 4286603 at *2 (W.D. Va. Sept. 21, 2021)(cleaned up)(quoting Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr. Inc., 7 F. App'x 197, 202 (4th Cir. 2001)). Sherwood relies on this particular exhibit throughout his amended complaint, see ECF No. 40 at 16, 25, 38, 44, 56, and its authenticity is not challenged. The court need not disregard this exhibit or the other exhibits that are relied upon in the amended complaint.

23

("a Younger abstention stay requires a dismissal with prejudice of the federal suit.")). Thus, the court dismisses Counts I-IV.

Typically, a federal district court abstaining based on Younger dismisses the case without consideration of the merits. "To say that abstention is in order … is to say that federal courts should not address the merits, period." Greening v. Moran, 953 F.2d 301, 304 (7th Cir. 1992). In this case, the court finds it important to note the significant deficiencies in the merits of Sherwood's pleadings where counsel has relied on nonexistent law. Because Sherwood's counsel has injected hallucinated law into the record, the court elaborates on the merits of these claims "to say what the law is," which is "emphatically the province and duty of the judicial department." Marbury v. Madison, 5 U.S. 137, 177 (1803).

1.    **Count I**

The § 1983 claims in Counts I, II, III, IV, V, and VI all appear to stem from a misunderstanding of the requirements of Va. Code § 19.2-72.

Specifically, in Count I, Sherwood raises a 42 U.S.C. § 1983 claim against the law enforcement officers involved in this case. He alleges that the warrants for the twenty-five misdemeanor assault-and-battery charges against him were unsupported by a "sworn affidavit or recorded oath as required by Va. Code § 19.2-72 and the Fourth Amendment" and were therefore "void ab initio." ECF No. 40 at 37-38. Allowing the arrests and charges to proceed amounts to malicious prosecution and unlawful seizure, he argues. Id.

24

Va. Code § 19.2-72 does not require a sworn probable-cause statement for a misdemeanor warrant when the complainant is a law-enforcement officer.[16] Nor does the Fourth Amendment. See, e.g. United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994)("The Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided the issuing magistrate be supported by 'Oath or affirmation.'")[17] Under Va. Code. § 19.2-72, the lack of a written, sworn probable cause statement did not render the warrants in Mr. Sherwood's case void.

The magistrate, having found probable cause "based on the sworn statements of Lt. Hix," issued twenty-five warrants for Sherwood's arrest.[18] ECF No. 2-5 (warrants filed as Plaintiff's Ex. D).[19] "Warrants and indictments usually 'conclusively determine the existence of probable cause,'" except when an officer "deliberately supplied misleading information that influenced the judge's or grand jury's decision." English v. Clarke, 90 F.4th 636, 648 (4th Cir. 2024)(quoting Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012)). Sherwood alleges no facts to suggest that Lieutenant Hix misled the magistrate. Instead, he alleges that there was

---

[16] Discussed infra. Va. Code § 19.2-72 states, in part:

> On complaint of a criminal offense to any officer authorized to issue criminal warrants he shall examine on oath the complainant and any other witnesses, or when such officer shall suspect that an offense punishable otherwise than by a fine has been committed he may, without formal complaint, issue a summons for witnesses and shall examine such witnesses. A written complaint shall be required if the complainant is not a law-enforcement officer; however a written complaint is required for a felony offense, regardless of whether the complainant is a law-enforcement officer. …

[17] The Sherwoods cite to nonexistent cases in their Count I discussion of qualified immunity. ECF No. 40 at 39-40. Those citations are discussed infra.

[18] Sherwood alleges that "no neutral magistrate ever determined that probable cause existed." ECF No. 40 at 17. This assertion is belied by the warrants that Sherwood attached to his complaint.

[19] The warrants were attached as an exhibit to the Sherwoods' original complaint. Sherwood relies on this exhibit throughout his amended complaint, see ECF No. 40 at 14, 31, 37, 52, 116, and its authenticity is not challenged. The court may consider this exhibit while ruling on the motions to dismiss. Epps, 2021 WL 4286603 at *2.

"physical contact captured on [the] school bus video" and that Hix "act[ed] directly on A.C.A. Lukacs's instruction to 'bring a charge for each contact made.'"[20] ECF No. 40 at 52, 17. Without more, this does not allege that Sherwood was arrested without probable cause.

Further, "[t]o maintain [a] Fourth Amendment [malicious prosecution] claim under § 1983, a plaintiff … must demonstrate, among other things, that he obtained a <u>favorable termination</u> of the underlying criminal prosecution." <u>Thompson v. Clark</u>, 596 U.S. 36, 39 (2022)(emphasis in original). The Supreme Court has clarified that a "favorable termination" means that the prosecution "ended without a conviction," and does not require "some affirmative indication of innocence." <u>Id.</u>

By the terms of Sherwood's plea agreement, his criminal case is still pending before state court. There has not yet been a "termination." <u>See infra.</u>

And the current determination is not "favorable." Sherwood pled <u>nolo contendere</u> to two of the charges against him. Under Virginia law, a <u>nolo contendere</u> plea is "tantamount to an admission of guilt for the purposes of the case." <u>Clauson v. Commonwealth</u>, 29 Va. App. 282, 288, 511 S.E.2d 449, 452 (1999). <u>Clauson</u> provides a fuller explanation:

> Virginia Code § 19.2–254 provides that the accused in a criminal proceeding "may plead not guilty, guilty, or nolo contendere" upon arraignment for the offense "on which he will be tried." [Va.] Code § 19.2–254. A plea of guilty constitutes a "self-supplied conviction." <u>Allen v. Commonwealth</u>, 27 Va.App. 726, 730, 501 S.E.2d 441, 443 (1998). On the other hand, a plea of <u>nolo contendere</u> is neither "a confession of guilt" nor a "declaration of innocence equivalent to a plea of not guilty." <u>Commonwealth v. Jackson</u>, 255 Va. 552, 555,

---

[20] Sherwood alleges that "Hix knew the bus surveillance footage showed benign contact, not 'rude, insolent, or angry' touching as required by Va. Code § 18.2-57." ECF No. 40 at 38. While "rude, insolent or angry" language does not specifically appear in the statute, courts have used that language in its definition of the offense. <u>See, e.g.</u> <u>Kelley v. Commonwealth</u>, 69 Va. App. 617, 628, 822 S.E.2d 375, 380 (2019)("[t]he slightest touching of another ... if done in a rude, insolent, or angry manner, constitutes a battery for which the law affords redress.")

499 S.E.2d 276, 278 (1998). "It allows an accused, thinking it best ... not to submit to trial, but unwilling to confess the truth of the charge, [and] ... plead guilty, to throw[ ] himself on the mercy of the court ... without confessing or denying ... guilt." Jefferson v. Commonwealth, 27 Va.App. 477, 484–85, 500 S.E.2d 219, 223 (1998) (internal quotations and citations omitted). "Nonetheless, by entering [the] plea ..., the defendant implies a confession ... of the truth of the charge ... [and] agrees that the court may consider him guilty for the purpose of imposing judgment and sentence." Id. at 485, 500 S.E.2d at 223 (internal quotations and citations omitted).

"Although it is said that a plea of nolo contendere means literally 'I do not contest it,' and 'is a mere statement of unwillingness to contest and no more,' it does admit 'every essential element of the offense [that is] well pleaded in the charge.'" Lott v. United States, 367 U.S. 421, 426, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961) (citations omitted). "Hence, it is tantamount to 'an admission of guilt for the purposes of the case,' and 'nothing is left but to render judgment, for the obvious reason that in the face of the plea no issue of fact exists, and none can be made while the plea remains of record.'" Id. (citations omitted).

Id. 29 Va. App. at 288–90, 511 S.E.2d at 452–53. See also ECF No. 72 at 5 (quoting the same).

Sherwood's plea of nolo contendere and the resulting deferred dismissal of several of the counts against him is in no sense a "favorable determination" within the meaning of Thompson, 596 U.S. 36. Sherwood therefore fails to plead a case of malicious prosecution under 42 U.S.C. § 1983.

Count I does not state a claim.

### 2.    Count II

Nor does Count II, in which Sherwood alleges that A.C.A. Marshall Lukacs pursued the case against Sherwood despite knowingly or recklessly disregarding "that the twenty-five warrants sought by Defendant Hix were unsupported by any sworn affidavit or recorded oath

27

as required by Va. Code § 19.2-72". ECF No. 40 at 42. For the same reasons as Count I, Count II does not state a claim.[21]

In Count II, plaintiff also argues that Lukacs "filed a motion to revoke Mr. Sherwood's bond … then withdrew it the next day while referencing a pending plea offer … a coercive use of bond authority condemned in United States v. Goodwin, 457 U.S. 368, 372 (1982)." ECF No. 40 at 43. Goodwin concerned the federal presumption of prosecutorial vindictiveness – a doctrine that allows for a plaintiff's claim that a prosecutor has retaliated against them for exercising their rights. Sherwood does not allege that he was exercising any particular right, nor does he allege how withdrawing the motion to revoke Sherwood's bond while referencing the pending plea offer was retaliatory. This too fails to state a claim.

### 3.     **Count III**

In Count III, Sherwood alleges that Lukacs "knew that the arrest warrants were unsupported by any sworn probable-cause statement as required by Va. Code § 19.2-72, yet she nonetheless advanced and maintained the prosecution." ECF No. 40 at 46. That lack of probable-cause statement was exculpatory evidence and "foundational jurisdictional record required to support the charges,"[22] Sherwood argues, making Lukacs' continued prosecution a violation of Sherwood's rights to due process under the Fourteenth Amendment. Id. at 46-47 (citing Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972);

---

[21] In Count II, the Sherwood also alleges that Lukacs also engaged in vindictive tactics, moving to quash Sherwood's defense's requests to the school for records then seeking them herself, in violation of "Anderson v. Commonwealth, 38 Va. App. 321 (2002), aff'd, 279 Va. 85 (2010)." ECF No. 40 at 44. Anderson, as cited, does not exist. This is a citation for Thomas v. Commonwealth, a case about venue. See infra.

[22] This appears to be a reference to the fictitious case "Peal v. Commonwealth, 26 Va. App. 505 (1998)" and a misquoted reference to the real case McCary v. Commonwealth, 228 Va. 219 (1984), which the Sherwoods cite for this "jurisdictional" language elsewhere in the amended complaint. See, e.g. ECF No. 40 at 39.

Anderson v. Commonwealth, 279 Va. 85, 688 S.E.2d 605 (2010)). Again, because the Virginia Code does not require a written, sworn probable-cause statement in these circumstances, this accusation fails to state a claim.

In Count III, plaintiffs also make a series of allegations about document management in the case, including that Lukacs violated the requirements of "Anderson v. Commonwealth, 38 Va. App. 321 (2002), aff'd 279 Va. 85 (2010),"[23] that she oversaw "actions involving the misrepresentation of official filings, the concealment of material records from subsequent review, and the use of bond threats for coercive leverage constitute an arbitrary and conscience-shocking abuse of prosecutorial authority within the meaning of County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)",[24] and that she reformatted one form of document in order to draft a filing in the case (a "coercive pattern"). ECF No. 40 at 47-50. The court cannot discern an actionable claim against A.C.A. Lukacs arising from these allegations.

4.    **Count IV**

In Count IV, Sherwood raises a First Amendment § 1983 retaliation claim and a Fourteenth Amendment substantive due process claim against A.C.A. Marshall Lukacs and C.A. John Alexander in their individual capacities. He argues that the prosecutors coordinated their use of official authority to "to punish and deter" Sherwood's "assertion of innocence, exercise of due-process rights, and efforts to obtain exculpatory evidence and judicial review." ECF No. 40 at 51. Sherwood alleges a "cumulative pattern of making unfounded bond-

---

[23] The Court of Appeals citation is incorrect here, but the Virginia Supreme Court citation is correct.
[24] Sacramento concerned the due process rights involved in a high-speed police chase, not abuse of prosecutorial authority.

29

revocation threats, strategically suppressing <u>Brady</u> material, and publishing defamatory post-disposition statements constitutes a deliberate abuse of power with no legitimate prosecutorial or law-enforcement objective." <u>Id.</u> at 59.

"[A] § 1983 retaliation plaintiff must establish three elements in order to prove a First Amendment § 1983 retaliation claim. First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action." <u>Suarez Corp. Indus. v. McGraw</u>, 202 F.3d 676, 685–86 (4th Cir. 2000)(internal citations removed)(citing <u>Huang v. Board of Governors</u>, 902 F.2d 1134, 1140 (4th Cir. 1990); <u>ACLU v. Wicomico County, Md.</u>, 999 F.2d 780, 785 (4th Cir. 1993)).

Nowhere in the complaint do plaintiffs allege that Sherwood was engaged in speech, or that the unspecified speech was protected speech. <u>See</u> ECF No. 40 at 51-60. Count IV fails to allege a First Amendment § 1983 retaliation claim.[25]

As for Sherwood's substantive due process claim, to survive a motion to dismiss "the Complaint must sufficiently establish three elements: (1) a specific liberty or property interest, (2) facts demonstrating how the defendant deprived that liberty or property interest, and (3) facts showing how the defendant's actions exceeded the bounds of legitimate government action and that no process could cure the deficiency." <u>Bills v. Virginia Dep't of Educ.</u>, 605 F. Supp. 3d 744, 757 (W.D. Va. 2022), <u>aff'd as modified sub nom.</u> <u>Bills on behalf of A.B. v.</u>

---

[25] Because Sherwood's First Amendment claim fails to meet any of these elements, the court does not examine Sherwood's claim that defendant Alexander's statements to the press on October 29, 2025, ECF No. 40 at 56-57, were made in retaliation for Sherwood's speech.

30

Virginia Dep't of Educ., No. 22-1709, 2024 WL 4834231 (4th Cir. Nov. 20, 2024)(citing Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 827 (4th Cir. 1995)). "[T]he cognizable level of executive abuse of power for a Fourteenth Amendment violation under § 1983 is that which shocks the conscience. … [T]he shocks the conscience standard is met where conduct is intended to injure and is unjustifiable by any government interest." Corbitt v. Baltimore City Police Dep't, 675 F. Supp. 3d 578, 588 (D. Md. 2023)(internal quotations removed).

Sherwood does not specify (1) what specific liberty or property interest he alleges was deprived. Presumably, he means his right to defend against criminal charges.

Sherwood alleges that the government deprived him of this unspecified Fourteenth-Amendment rights by "continuing the prosecution despite knowing no probable-cause record existed," which "demonstrates that Defendants not only lacked lawful basis for the charges but also used the prosecution itself as an instrument of coercion and retaliation." ECF No. 40 at 52. Again, this claim relies upon an interpretation of Va. Code § 19.2-72 that would require written probable cause affidavits—the Virginia statute does not require written affidavits or written sworn probable cause statements for misdemeanor warrants when the complainant is a law enforcement officer. Va. Code § 19.2-72. The twenty-five warrants in Sherwood's case serve as evidence that there was a finding of probable cause. See infra.

Separately, Sherwood points to two instances of conduct to allege that the government was engaged in a "continuous strategy of using bond threats as leverage to coerce a plea rather than address any legitimate violation," ECF No. 40 at 56. First, Sherwood points to A.C.A. Lukacs's use of a template "Motion to Revoke Bond" document in drafting the Commonwealth's Response to the Defendant's Motion for a Bill of Particulars as "a clear,

31

implicit message: that further litigation or insistence on constitutional process could result in incarceration." ECF No. 40 at 53. The document, provided at ECF No. 40 at 54, shows that Lukacs used a format document for a "Motion to Revoke Bond," and crossed out all of the language specific to bonds. How this drafting practice amounts to an implicit threat is unclear to the court. Without more, the court cannot discern how this amounts to coercion, let alone a continuous strategy that was arbitrary or "shocks the conscience." See Hawkins v. Freeman, 195 F.3d 732, 742 (4th Cir. 1999)(elaborating on "the kind of executive conduct that can fairly be said to 'shock the conscience,' to be 'fatally arbitrary in the constitutional sense'" and would support a claim of substantive due process violation).

Second, Sherwood points to the prosecution's motion for bond revocation filed on September 30, 2025, which was later revoked, as evidence of coercion. ECF No. 40 at 54-55. It seems the bond revocation motion was made following Sherwood's contact with "potential witnesses." Id. at 55. These actions allegedly "exemplif[y] an arbitrary and retaliatory misuse of prosecutorial authority intended to hinder the defense and exert coercive leverage toward a plea." Id. at 59. The amended complaint points to no case law or examples of similar conduct being found unconstitutional. See ECF No. 40 at 57-59. Based on the facts as alleged, it is not clear that this bond revocation motion amounted to coercion. Without more, Count IV also does not state a claim upon which relief can be granted.

### C.      Further Constitutional Claims

In Counts V and VI, the Sherwoods raise an equal protection claim and a stigma-plus due process claim, both under 42 U.S.C. § 1983. The Sherwoods bring these claims as a family, alleging, on equal protection, that the "arbitrary and irrational treatment" of Mr. Sherwood

"foreseeably and directly injured…his wife and the three children—whose reputations, emotional well-being, educational environments, and familial stability were severely harmed as an immediate consequence of the Defendants' actions." ECF No. 40 at 61. They also allege, on stigma-plus due process, that the family suffered "community hostility, school-based stigma, and emotional trauma[.]" Id. at 74.

Again, because "a Section 1983 plaintiff, like any person who claims a deprivation of constitutional or federally-protected rights, must allege some violation of his or her personal rights – not those of another[,]" Counts V and VI are dismissed with respect to plaintiffs Lauren Sherwood, Savannah Beckner, B.B. and H.B with prejudice. Midgett, 2021 WL 4973634 at *3.

The court then turns to Counts V and VI with respect to Mr. Sherwood, only.

1.    **Count V**

In Count V, Sherwood raises a 42 U.S.C. § 1983 claim alleging a violation of rights to equal protection under a class-of-one theory. He raises this claim against the County of Botetourt and Hix, Ward, Bentley, Alexander, and Lukas in their personal capacities.

An actionable class-of-one equal protection claim requires a showing that the plaintiff has been intentionally treated differently from others similarly situated, and that there is no rational basis for the difference in treatment. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (finding a plaintiff alleged a class-of-one claim where the Village demanded a 33-foot easement from her property to connect to the municipal water supply, compared to the 15-foot easement requirement for similarly situated property owners). Further, "[a] class-of-one claim requires a showing that highly similar comparators received better treatment." SAS

Assocs. 1, LLC v. City Council for City of Chesapeake, Virginia, 91 F.4th 715, 723 (4th Cir. 2024). "[T]he failure to identify or necessarily imply a similarly situated comparator is fatal to a class-of-one claim." Wilson v. Town of Mount Jackson, No. 5:21-CV-00055, 2022 WL 819531, at *13 (W.D. Va. Mar. 17, 2022) (citing Siena Corp. v. Mayor & City Council of Rockville, 873 F.3d 456, 465 (4th Cir. 2017); Tri-County Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 440 (4th Cir. 2002)). At the motion to dismiss stage, the plaintiff needs to allege facts sufficient to support a reasonable inference that all these elements were met. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Sherwood alleges that he was denied equal protection of the laws because (1) he, singularly, was "denied access to [his] probable cause materials" (i.e. the "probable cause documentation" that is not required in his case, see infra); (2) the Botetourt County JDR online portal has a separate case entry for Mr. Sherwood that misspells his name (i.e. "Raynond" vs. "Raymond") and "no other defendant in the County's system is known to have been subject to such an irregularity"; (3) the Sheriff's Office publicized a press release about the facts of Sherwood's arrest and charges but did not have a press release for the indictment of two other defendants who had committed more serious felony sexual offenses; (4) the County has close political ties to a prominent local family, and Sherwood is not affiliated with those networks; (5) the defendants "placed extraordinary reliance" of the complaint from Kasey Thomas about Sherwood because she is "an insider parent with professional relationships throughout the Criminal-justice infrastructure," including family ties to law enforcement; and (6) the Sheriff's Office press release about Sherwood's arrest "was an arbitrary deviation from County

34

practice." There is no rational basis for this differential treatment, he argues. ECF No. 40 at 62-66.[26]

The court reviews each of these allegations in turn.

For the reasons explained throughout this opinion, Sherwood's equal protection claim with respect to (1) the "probable-cause materials" fails. Those materials were not required in his case under Virginia Code § 19.2-72.

Sherwood's allegation with respect to his (2) misspelled record with the Botetourt County JDR portal also fails. To recover under the equal protection clause, "a plaintiff must present proof of discriminatory intent on the part of the defendants." Smith v. Town of Clarkton, N. C., 682 F.2d 1055, 1065 (4th Cir. 1982)(citing Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252 (1977); Washington v. Davis, 426 U.S. 229 (1976)). Sherwood's complaint does not ascribe this misspelled record to any of the defendants. And, without more, the fact of a clerical error is insufficient to allege intentional treatment. Further, Sherwood's allegation that "upon information and belief, no other defendant in the County's system is known to have been subject to such an irregularity" does not identify any similarly situated comparators.

---

[26] Sherwood raises this claim against the County of Botetourt, alleging that the County invested significantly into law enforcement technology ("including multimillion-dollar enhancements to its interoperable radio-tower system, emergency communications upgrades, and data-link infrastructure") without investments "in systems designed to safeguard the procedural or constitutional rights of accused persons[.]" ECF No. 40 at 61. Sherwood does not allege how these County investments connect to the alleged six-part scheme that violated his rights to equal protection. Further, the County cannot be held liable under Monell for actions carried out by the Sheriff's Office and the Commonwealth's Attorneys, who are constitutional officers that are "not agents of or answerable to Virginia localities" like the County. Weiner v. Albemarle Cnty., Va., No. 3:17-cv-00046, 2018 WL 542979, at *5-8 (W.D. Va. Jan. 24, 2018). See also Roop v. Whitt, 289 Va. 274, 280, 768 S.E.2d. 692, 695 (2015).

35

For (3) and (6), the press release from the Sheriff's Office, Sherwood alleges that he was treated less favorably than the two defendants in Botetourt County who were indicted in March 2025 for serious felony sexual offenses because the Sheriff's Office issued a press release on Facebook[27] about his arrest but not theirs. ECF No. 40 at 63, 65.

The Equal Protection Clause requires that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV (emphasis added). This protection "guarantees equal laws, not equal results." Coal. for TJ v. Fairfax Cnty. Sch. Bd., 68 F.4th 864, 887 (4th Cir. 2023)(quoting Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 273 (1979)).

Here, Sherwood argues that the discretionary decision to post on Facebook about Sherwood's arrest and not other people denied him equal protection of the laws. But it is unclear how the decision to post about his arrest publicly applied the laws differently to him. See, e.g. Bermeo v. Andis, No. 1:23-CV-041, 2024 WL 3850443, at *8 (W.D. Va. Aug. 16, 2024), vacated and remanded on other grounds, 163 F.4th 87 (4th Cir. 2025)("[Plaintiff] has not shown that the publication of a press release about a police investigation that resulted in criminal charges violates her constitutional rights.") Compare Olech, 528 U.S. 562 (recognizing an equal protection class-of-one claim where the Village of Willowbrook applied its rule for easements differently for one homeowner compared to others); Willis v. Town Of Marshall, N.C., 426 F.3d 251, 263 (4th Cir. 2005)(holding that a town's policy banning lewd

---

[27] The amended complaint alleges that the press release "portray[ed Sherwood] as a sexual threat before any affidavit, hearing, or validation of probable cause." ECF No. 40 at 63. As discussed infra, the Facebook post expressly did not portray Sherwood as a sexual threat, no affidavit was required under Virginia law, and the magistrate had found probable cause sufficient for the issuance of twenty-five warrants for Sherwood's arrest.

dancing at town-sponsored concerts did not violate the Equal Protection clause, but the application of the rule to one dancer alone could amount to a class-of-one claim).

Further, a plaintiff alleging an equal protection claim as a class-of-one is required to show that they were treated differently from similarly situated parties, and to show that those parties are similar "in all relevant respects." A Hand of Hope Pregnancy Res. Ctr. v. City of Raleigh, 332 F. Supp. 3d 983, 1003 (E.D.N.C. 2018)(quoting Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)). The Fourth Circuit has not yet provided "a clear standard as to how concretely and specifically a plaintiff must compare himself to others to state a class-of-one claim." Mendes v. Beahm, No. 5:19-CV-00072, 2020 WL 3473656, at *6 (W.D. Va. June 25, 2020)(quoting Foster v. United States EPA, No. 2:14-cv-15744, 2016 WL 4473453, at *8 (S.D. W.Va. Aug. 22, 2016)). "[A]fter Twombly and Iqbal, it is insufficient [to state a class-of-one claim] to simply allege that other, unidentified [comparators] have 'comparable' or 'similar' conditions — the claim must be supported by specific facts plausibly suggesting the conditions … and the [comparators] themselves are similar in all material respects." Foster, 2016 WL 4473453, at *9 (quoting Kansas Penn Gaming, LLC v. Collins, 626 F.3d 1210, 1220 (10th Cir. 2011)). It follows, then, that those "material respects" are the similarities between the plaintiff and their comparators that demonstrate the existence of no rational basis for being treated differently.

Here, Sherwood alleges that "two other Botetourt County defendants indicted on March 11, 2025, for serious sexual offenses" were similarly situated to him. ECF No. 40 at 63. Based on the facts alleged in the complaint, the court finds this class of "similarly situated" individuals remarkably different from Sherwood in key material respects that would relate to

37

a rational basis for the issuance of a press release from law enforcement. See Olech, 528 U.S. at 564 (holding, in part, that an actionable equal protection class-of-one claim requires a showing that "there is no rational basis for the difference in treatment.")

For one, Sherwood was a public school bus driver, in a position of public trust, and his charges stemmed from actions taken within the scope of his position. There are no alleged facts to support a in inference that his comparators were in similar positions of public trust. This material respect is important when considering whether Sherwood has adequately pled facts to support a reasonable inference that there was no rational basis for their different treatment.

Two, Sherwood was arrested and ultimately pled nolo contendere to misdemeanor—not felony—charges of assault and battery. Those offenses, as the Sheriff's Office and the prosecution assured the public, were not sexual in nature. ECF No. 40 at 18 (noting that the press release from the Sheriff's Office specified that any touching "did not involve intimate areas"); 56 (C.A. Alexander stating that "there was no evidence to support charges of sexual assault").[28] This is entirely different from the situation of the alleged comparators who committed "serious sexual felonies, including forcible sodomy, aggravated sexual battery, attempted rape, child-exploitation offenses, and possession of child pornography," ECF No.

---

[28] This appears to be a point of confusion throughout the pleadings. Sherwood pled nolo contendere to two charges of assault and battery under Va. Code § 18.2-57, which is not a sexual offense, and the statements made by the Sheriff's Office and prosecution expressly indicate that Sherwood's offense was not sexual in nature. Still, Sherwood's complaint alleges that the defendants were somehow implying the opposite. See ECF No. 40 at 18-19 (alleging that Sheriff's Office statement that the alleged battery "did not involve intimate areas" somehow "conveyed the false impression of sexual wrongdoing" or "sexually improper conduct"); 26 (alleging that the prosecution's statements to the Roanoke Times that "there was no evidence to support charges of sexual assault" is something that "ha[s] understandably been interpreted as suggesting sexual misconduct or moral unfitness" and "wrongfully associated his name with sexual impropriety"). The court sees no reasonable interpretation of the press releases suggesting that Sherwood's conduct was sexual in nature.

38

40 at 63, in which cases "[t]he Fourth Circuit has recognized a particular sensitivity[.]"" Doe v. Darden Restaurants, Inc., 736 F. Supp. 3d 297, 301 (D. Md. 2024)(quoting Doe v. Sidar, 93 F.4th 241, 248 (4th Cir. 2024)). This, too, provides a rational basis for providing a press release about Sherwood's arrest but not about these other defendants. It also provides a rational basis for issuing a press release that clarified—as the press release did in this case—that Sherwood's crime was not sexual in nature. Thus, even if the Sheriff's Office press release could amount to a denial of equal protection under the laws, Sherwood's complaint does not allege facts to support an inference that there is a similarly situated group that was akin to him in respects material to this case.

Count V does not state a claim, and is dismissed.

### 2. **Count VI**

In Count VI, Sherwood alleges a violation of "stigma-plus" due process under § 1983 against Sheriff Ward, Sgt. Bentley, C.A. Alexander, A.C.A. Lukacs, school administrator McClung and the Botetourt County School Board "in their respective individual—or municipal—capacities as pleaded." ECF No. 40 at 67. Sherwood claims that the defendants inflicted reputational harm (either as the state or under color of law), and that reputational harm was coupled with a tangible alteration in Sherwood's public employment. Id. at 67 (citing Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2017); Ridpath v. Bd. of Governors of Marshall Univ., 447 F.3d 292, 307-10 (4th Cir. 2006)).

The Fourteenth Amendment guarantees "the right to procedural due process when governmental action threatens a person's liberty interest in his reputation and choice of occupation." Ridpath, 447 F.3d at 307 (citing Bd. of Regents v. Roth, 408 U.S. 564, 573 & n.

12 (1972); citing, c.f. Conn v. Gabbert, 526 U.S. 286, 291-292 (1999)). When the state makes a defamatory statement about a person, their Fourteenth Amendment rights can be implicated where, "in addition to the defamatory statement, a right or status was altered or extinguished." Univ. Gardens, 419 F. Supp. 2d at 738. Courts recognize this type of § 1983 claim as a "stigma plus" claim. Id. More than alleging mere incompetence, "[t]he type of communication that gives rise to a protected liberty interest implies 'the existence of serious character defects such as dishonesty or immorality.'" Ridpath, 447 F.3d at 308 (quoting Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982)).

The Fourth Circuit in Sciolino has held that this type of due process claim requires the plaintiff to show "that the charges against him: (1) placed a stigma on his reputation; (2) were made in public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino, 480 F.3d at 646 (citing Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 n.5 (4th Cir. 1988)).[29] At the motion to dismiss stage, Sherwood needs to allege facts sufficient to support a reasonable inference that all these elements were met. Ashcroft, 556 U.S. at 678.

Sherwood alleges that the defendants defamed him under color of their state authority, and that defamation cost him his employment with Botetourt County Public Schools. Specifically, he alleges that defendant Kasey Thomas, under color of law in her capacity as a probation officer, reported to school officials that her daughter told her about Sherwood's inappropriate behavior. Sheriff Ward and Sgt. Bentley "acting under color of state law, issued

---

[29] The court notes that plaintiffs omitted the fourth, "falsity" element in Scolino twice in their arguments in support of their motion for a temporary restraining order. ECF No. 95 at 4. They successfully noted all four elements at ECF No. 99, at 6.

an official press release on May 6 followed by a subsequent statement to a media outlet on the next day" that was defamatory "because it falsely and gratuitously associated [Sherwood's] name with accusations of sexual or indecent misconduct towards children, imputing unchastity and criminal moral depravity." ECF No. 40 at 68. Sherwood also alleges that C.A. Alexander "amplified the stigma" with his October 2025 statements to The Roanoke Times and WDBJ7 News that Sherwood's "touching verged on inappropriate," that "there was no evidence to support charges of sexual assault" and that the prosecution considered that Sherwood was no longer working as a school bus driver when agreeing to his plea agreement. Id. at 71.[30]

Further, Sherwood alleges that he lost his job with Botetourt County Public Schools because of those statements. Specifically, he alleges that defendant McClung issued termination letters on May 2 and 9, 2025, that referenced the allegedly defamatory statements made by Thomas and law enforcement. The School Board "ratified this action" by voting to terminate Sherwood from his position "without providing him any meaningful opportunity to contest the charges or clear his name," foreclosing "his property interest in continued employment." Id. at 72 (citing Sciolino and Ridpath). Because the statements from law enforcement, the termination letters from McClung, and Sherwood's termination were all "made in close temporal proximity," Sherwood alleges that his adverse employment decision was made "in conjunction" with the statements from other actors. Id. (citing Cannon v. Village of Bald Head Island, 891 F.3d 489, 500-01 (4th Cir. 2018)).[31]

---

[30] Sherwood again alleges that there was "no probable cause" in his case. ECF No. 40 at 71. For the reasons described infra, that claim is not borne out by the facts alleged in the complaint.

[31] In a parenthetical, Sherwood's counsel attributes a quote to Cannon that appears nowhere in the case. ECF No. 40 at 73.

Again, under Sciolino, this due process claim requires the plaintiff to show "that the charges against him: (1) placed a stigma on his reputation; (2) were made in public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino, 480 F.3d 646. In the amended complaint, Sherwood does not allege facts to support a reasonable inference that (2) the allegedly defamatory statements were made by his employer, or that (4) they were false. Count VI fails to state an actionable claim.

First, Sherwood does not allege facts to support an inference that the allegedly defamatory statements were (2) made in public by his employer. Sherwood was employed by Botetourt County Public Schools. ECF No. 40 at 11. Most of the state actors who he alleges defamed him—Thomas, Sgt. Bentley, Sheriff Ward, and C.A. Alexander—do not represent and are not affiliated with the Botetourt County Public Schools.

The only affiliate of the school district who Sherwood alleges defamed him is McClung, who allegedly "explicitly incorporated the defamatory narrative originating from the Sheriff's Office and the Commonwealth's Attorney's Office" in his May 2, 2025, letter to Sherwood. ECF No. 40 at 72 (citing ECF No. 2-2, termination letter noting that "[t]his recommendation is due to unprofessionalism when it comes to your interaction with female students on the school bus"). As a matter of timing, the court does not see how McClung's May 2, 2025, letter could explicitly incorporate the statements in the Sheriff's Office press release that was published four days later, on May 6, 2026. See ECF No. 40 at 73 (citing ECF Nos. 2-6 (press release dated May 6, 2025), 2-7 (press release dated May 7, 2025)).[32] And because these

---

[32] Again, because Sherwood explicitly relies upon these documents in his amended complaint, and their authenticity is unchallenged, the court may consider them. Epps, 2021 WL 4286603 at *2.

statements were made in letters written directly to Mr. Sherwood, these facts do not support an inference that McClung made those statements "in public." Sciolino, 480 F.3d 646.[33]

Regardless, Sherwood implies that the Sheriff's Office press releases may be attributable to the School Board, at least in part, because the May 6 and May 7 press releases were "approved" by the School Board. ECF No. 40 at 23. But the School Board's alleged approval is insufficient to support an inference that the Sheriff's Office press release, on the Sheriff's Office Facebook page, or a subsequent news article quoting the Sheriff's Office, amounts to speech from the School Board. See In re Volkswagen AG Sec. Litig., 661 F. Supp. 3d 494, 522 (E.D. Va. 2023)(holding that a plaintiff's allegation that a party holds "a daily monitoring function and the participation in the preparation of public statements does not allow [a] Court to infer that [the monitoring party] 'collaborated with the authors to such an extent that they controlled the [press release's] publication.'")(quoting Noto v. 22nd Century Grp., Inc., 35 F.4th 95, 104 (2d Cir. 2022)).

Nonetheless, Sherwood alleges broadly that his "reputation and employment were destroyed through interconnected acts of the same state apparatus" that the combination of these disparate actors "establish a single, coordinated sequence of stigmatization and

---

[33] The fact that these statements were not publicly made also belies Sherwood's claims, made throughout the complaint, that he was entitled to a name-clearing hearing before the School Board. The constitutional basis for a terminated employee to receive a name-clearing hearing is that they have a liberty interest in clearing their name when stigmatizing information regarding the reasons for their termination is publicly disclosed. Cox v. Roskelley, 359 F.3d 1105, 1110 (9th Cir. 2004)(citing Board of Regents v. Roth, 408 U.S. 564, 573 (1972)). A due process claim in this context requires a showing, that "(1) the accuracy of the charge is contested; (2) the employer publicly disclosed the charge; and (3) the charge was made in connection with his termination of employment." Lengele v. Willamette Leadership Acad., 641 F. Supp. 3d 956, 965 (D. Or. 2022)(emphasis added). Because Sherwood alleges no public statement of the charges from the School Board, he does not allege facts sufficient to support an inference that he was entitled to a name-clearing hearing under Cox.

termination that simultaneously destroyed [Sherwood's] reputation and employment without due process." ECF No. 40 at 72-73. Because these actions came from unrelated actors, their "close temporal proximity" is insufficient to establish that they happened "in conjunction with" one another, despite Sherwood's allegation. Id. See Roe v. Lynch, 997 F.3d 80, 86 (1st Cir. 2021)("'Where the stigma and the incremental harm -- the 'plus' factor -- derive from distinct sources, a party cannot make out a viable procedural due process claim ... even if both sources are government entities.'")(quoting URI Student Senate v. Town of Narragansett, 631 F.3d 1, 10 (1st Cir. 2011)).

Second, Sherwood does not allege facts to support an inference that the allegedly defamatory statements by Thomas, Bentley, Alexander, or McClung were false. This, too, is fatal to his stigma-plus claim. Ridpath, 447 F.3d at 312 ("[t]here can be no deprivation of liberty unless the stigmatizing charges at issue are false.")

In the allegedly defamatory press releases, the Sheriff's Office "publicly identified bus driver Raymond Lewis Sherwood III as the suspect in a school assault investigation," specified that it involved misconduct of a school bus driver and that the "nature of the alleged conduct did not meet the statutory criteria for sexual battery." ECF No. 40 at 68. The May 7, 2025 WSET article quoting the Sheriff's Office notes that "parents … reached out about inappropriate contact" and that the incidents "were not hugs or high fives." Id. at 69. These statements are wholly consistent with the allegations in the amended complaint.

Rather than argue that the statements are false, Sherwood argues that they draw an unflattering picture. By making limited, true statements about the fact that Sherwood had been arrested and that the charges were not sexual in nature, the police somehow "falsely and

gratuitously associated [Sherwood]'s name with accusations of sexual or indecent misconduct toward children, imputing unchastity and moral depravity" and they "gratuitously referenc[ed] a sexual-battery statute" to "cast Mr. Sherwood in the light of a suspected sexual offender." Id. at 68. This is not a reasonable inference to make. The alleged statements here are true in light of the facts presented in the amended complaint. Count VI therefore does not state a claim upon which relief can be granted.

Last, "the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property … To have a protected property interest in his employment, a person must possess a legitimate claim of entitlement to it—created, for example, by contract or state law." Ridpath, 447 F.3d at 308 n. 14. Here, Sherwood alleges that the School Board's ratification of his termination "foreclosed his property interest in continued employment." ECF No. 40 at 72. He does not allege facts to support the inference that his interest in his employment was a protected property interest under the Fourteenth Amendment.

"In Virginia, an employment relationship is presumed to be at-will, which means that the employment term extends for an indefinite period and may be terminated by the employer or employee for any reason upon reasonable notice." Cnty. of Giles v. Wines, 262 Va. 68, 72, 546 S.E.2d 721, 723 (2001). That presumption may be rebutted, but Sherwood alleges no facts that would rebut that presumption in his pleadings. "The Fourth Circuit has repeatedly made it clear that at-will employees lack an enforceable expectation of continued employment (i.e., a property interest) and, consequently, cannot maintain a claim under Section 1983 for violation of due process under the fourteenth amendment based on their employment

45

discharge." Williams v. Strickland, No. CIV. A. 3:92-515-19, 1993 WL 153915, at *4 (D.S.C. Mar. 12, 1993). Thus, Sherwood cannot maintain this claim under Section 1983.

Thus, Count VI does not state a claim, and is dismissed.

### D.    Disability Discrimination Claims

Next, the Sherwoods make a series of claims under Title II Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. They allege that the County and Sheriff Ward (in his personal capacity) denied Sherwood the protections of Title II (Count VII) and under Section 504 (Count VIII). They also allege that the County and the Botetourt County School Board denied Sherwood the protections of Section 504 (Count IX) and Title II (Count X).

An actionable claim under Title II of the ADA requires a showing from the plaintiff that "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 503 (4th Cir. 2016). And "[i]n order to establish a violation of the Rehabilitation Act, a plaintiff must demonstrate that she is: '(1) a 'disabled individual' as defined in the [Rehabilitation Act]; (2) 'otherwise qualified' to participate in the offered activity or to enjoy its benefits; (3) excluded from such participation or enjoyment solely by reason of his or her handicap; and (4) that the program administering the activity receives federal financial assistance.'" Lucas v. VHC Health, 128 F.4th 213, 220 (4th Cir. 2025)(quoting Basta v. Novant Health Inc., 56 F.4th 307, 315 (4th Cir. 2022)).

46

The elements these two claims are largely similar. "To the extent possible, we construe the ADA and Rehabilitation Act to impose similar requirements." Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461 (4th Cir. 2012). However,"[t]he two statutes differ only with respect to the third element, causation. To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion." Id. at 461-462 (citing Baird ex rel. Baird v. Rose, 192 F.3d 462, 468–69 (4th Cir.1999)).

For each of these claims, plaintiffs allege facts to support a finding of (1) disability. Plaintiffs allege that Mr. "Sherwood is a 100% service-connected disabled veteran with cognitive, processing and memory-related impairments well known to Botetourt County Officials." ECF No. 40 at 77. "His VA disability records confirm that, at all relevant times, he suffered from service-connected conditions substantially limiting major life activities, and by September 2025 he had been rated 100 percent permanent and total." Id. at 85.[34]

Sherwood alleges that his treatment—namely, the circumstances of his arrest and his termination from his position as a school bus driver—was "on the basis of his disability," ECF No. 40 at 85,"because of his disability" Id. at 84, 89, or that his "disability was the central reason [d]efendants' concealment and procedural deviations inflicted extraordinary harm," Id. at 83.

---

[34] Plaintiffs refer to exhibits "VA Rating," "100% Rating" "DIS-1", and "DIS-2" which all appear to be referring to a September 2025 VA decision on Sherwood's disability. That decision is not attached original or amended complaint. ECF No. 40 at 2, 32, 33. The court accepts this factual allegation as true in its consideration of the motion to dismiss. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

However, nowhere in the amended complaint do the Sherwoods allege facts to support a reasonable inference that Sherwood's disability was either the motivating cause for his treatment pursuant to the investigations into his crime, his arrest, his suspension, or his termination (for his ADA claims) or that his treatment was solely because of that disability (for his Section 504 claims). "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Without more, this does not state a claim.

The Fourth Circuit has permitted associational discrimination claims under the ADA, and several circuits have permitted associational discrimination claims pursuant to the Rehabilitation Act. Ganzzermiller v. Univ. of Maryland Upper Chesapeake Med. Ctr., No. CV CCB-16-3696, 2019 WL 4751457, at *9–10 (D. Md. Sept. 30, 2019). However, because Mr. Sherwood does not allege facts to support an ADA or Section 504 claim, any claim that his family asserts based on those same facts also fails under Rule 12(b)(6).

Further, because "Title II unambiguously does not provide a vehicle for public employment discrimination claims," there is no set of facts on which Sherwood could allege this Title II claim against Botetourt County Public Schools. Reyazuddin v. Montgomery Cnty., Md., 789 F.3d 407, 420-21 (4th Cir. 2015). Accordingly, Counts VII, VIII, IX and X are dismissed.

### E.    Municipal Liability under Monell

In Count XI, the Sherwoods claim liability under the same theories as those described elsewhere in the complaint—i.e., "unlawful seizure and malicious prosecution without

48

probable cause" (alleged in Counts I-IV); "[d]eprivation of liberty and property interests in reputation and employment without due process (Fourteenth Amendment – stigma-plus and procedural due process)" (alleged in Count VI); "continuing reputational injury and economic loss caused by coordinated County and School Board action" (alleged in Counts V, XIII, XV); and "policy and custom[s]" causing the injuries (alleged in Counts VI, IX, X). ECF No. 40 at 100.

The court dismisses Count XI as duplicative. See, e.g. Corps Logistics, LLC v. Dutil, No. CV206683MASZNQ, 2021 WL 795198, at *11 (D.N.J. Feb. 28, 2021)("It is well-recognized that a court may dismiss a duplicative claim in a complaint."); Chihota v. Fulton, Friedman & Gullace, LLP, No. CIV. WDQ-12-0975, 2012 WL 6086860, at *2 (D. Md. Dec. 5, 2012)("When confronted with duplicative litigation, and after weighing the equities of the case, a district court is empowered to dismiss the duplicative suit with prejudice."); Hum. Rts. Def. Ctr. v. Baxter Cnty., Arkansas, No. 3:17-CV-3070, 2018 WL 2050163, at *2 (W.D. Ark. May 2, 2018) ("The law is clear that dismissal of duplicative claims is proper."); Marak v. Dallas/Fort Worth Int'l Airport Bd., No. 3:04-CV-960R, 2005 WL 780405, at *2 (N.D. Tex. Apr. 6, 2005) ("A district court has the authority to dismiss a duplicative claim filed by the same plaintiff.").

### F.    Title IX Claims

In Count XII, the Sherwoods raise claims of Title IX retaliation and sex-based discrimination against the School Board and McClung in his personal capacity.

Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the

49

benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a).

As a matter of law, "because school officials are not themselves recipients of federal funds, they may not be sued in their individual capacities for violations of Title IX." Does 1-22 v. Bd. of Educ. of Prince George's Cnty., 644 F. Supp. 3d 149, 157 (D. Md. 2022). See also Graham v. City of Manassas Sch. Bd., 390 F. Supp. 3d 702, 708 n.8 (E.D. Va. 2019)("school official may not be sued in their individual capacity under Title IX)(quoting Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 611 (8th Cir. 1999)). Thus, the Sherwoods fail to state a claim under Title IX against McClung, and this claim is dismissed.

The parties do not dispute that Botetourt County Public Schools receive public funds. The court therefore considers the Sherwoods' Title IX claim with respect to defendant Botetourt County School Board, only.

"At the pleading stage, the plaintiffs are required to sufficiently allege two elements to state a Title IX retaliation claim. First, they must allege that they engaged in protected activity under Title IX, and second, they must allege that — as a result of their protected activity — they suffered an adverse action attributable to the defendant educational institution." Feminist Majority Found. v. Hurley, 911 F.3d 674, 694 (4th Cir. 2018).

The factual basis of the Sherwoods' Title IX claim is difficult to decipher. To the best of the court's understanding, it appears the Sherwoods allege that Mr. Sherwood's termination

50

from his position with the school district was "infected by gender-based stereotypes that a male bus driver interacting with female students was inherently suspect." ECF No. 40 at 103.[35]

Sherwood's arrest and pending termination impacted his family. Plaintiffs allege that Mrs. Lauren Sherwood wrote an email on May 7, 2025, to school administrators notifying the school that "one daughter would be completing her schoolwork virtually for mental health and safety reasons and that another would attend school only for her final lacrosse game." ECF No. 40 at 102 (citing ECF No. 2-8)). This email, they allege, "constituted protected activity under Title IX, as it opposed gender-based stereotyping and harassment flowing from the County's portrayal of Mr. Sherwood's 'inappropriate contact' with female students." Id.

The email, attached to the original complaint at ECF No. 2-8 and relied on in the amended complaint at ECF No. 40 at 102, reads:

> "Savannah will be completing her work virtually today for mental health and safety reasons. If you have any questions about this, feel free to give me a call.
>
> [___] will be attending because she wants to play in her final lacrosse game and I fully expect that her safety and well being will be monitored throughout the day."

---

[35]The Sherwoods argue that this is "a form of sex discrimination recognized in <u>Doe v. Fairfax Cnty. Sch. Bd.</u>, 1 F.4th [257,] 270 [(4th Cir. 2021).]" <u>Id.</u> at 103. This is another misstatement of law. The Fourth Circuit in <u>Doe</u> did not address, let alone "recognize" stereotype-based discrimination. <u>Doe</u>, 1 F.4th 257 (finding, in a case concerning a female student's Title IX claim arising her reports of sexual harassment to the school administrators, that (1) a jury's finding that the school board lacked actual notice of the student's sexual assault allegations lacked evidentiary support, warranting a new trial, and that (2) the questions of whether the school board acted with deliberate indifference and whether the sexual harassment deprived her of equal access to educational opportunities were questions for a jury).

Nonetheless, the court notes that "discrimination on the basis of sex stereotypes" is barred by Title VII. <u>Nichols v. Azteca Rest. Enters., Inc.</u>, 256 F.3d 864, 874-875 (9th Cir. 2001)(citing <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 229 (1989)). And "[l]ike our sister circuits, [the Fourth Circuit] thus applies familiar Title VII retaliation concepts to the requirements of a Title IX retaliation claim." <u>Feminist Majority</u>, 911 F.3d at 694 (citing <u>Preston v. Commonwealth of Va. ex rel New River Cmty. Coll.</u>, 31 F.3d 203, 207 (4th Cir. 1994)).

ECF No. 2-8.[36]

Because McClung, the school's Title IX coordinator, allegedly did not investigate, acknowledge or respond to this email, that "total-non-response constitutes deliberate indifference." ECF No. 40 at 102-103 (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998); Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 650 (1999)). Further, plaintiffs argue, the School Board's later ratification of Sherwood's termination amounted to "retaliatory escalation" which "constitutes a materially adverse action under Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)." Id.

The court finds that the amended complaint does not sufficiently allege facts to support the first prong of a Title IX retaliation claim—i.e., that Lauren Sherwood's May 7, 2025, email was protected activity under the statute. "[F]or the first prong [of a Title IX retaliation claim], protected activity includes 'oppositional conduct that is prompted by a reasonable belief that [a school] is not in compliance with its Title IX obligations.'" Karanik v. Cape Fear Acad., Inc., 608 F. Supp. 3d 268, 287 (E.D.N.C. 2022)(quoting Lamb v. Liberty Univ., Inc., No. 6:21-cv-00055, 2022 WL 731526, at *3 (W.D. Va. Mar. 10, 2022)(unpublished)). "For example, protected activity includes 'advocating against and reporting sexual harassment.'" Id., (quoting Feminist Majority, 911 F.3d at 694). Protected activity can also include "testifying in a proceeding, or otherwise participating in an investigation about discrimination," Castro v. Yale Univ., 518 F. Supp. 3d 593, 611 (D. Conn. 2021), or "actively complaining or opposing alleged discrimination on the basis of sex under title IX." Doe v. Dordt Univ., 616 F. Supp. 3d 872,

---

[36] The email is an exhibit to the Sherwoods' original complaint. Because Sherwood relies on this exhibit in his amended complaint and its authenticity is not challenged, the court may consider this exhibit while ruling on the motions to dismiss. Epps, 2021 WL 4286603 at *2.

902 (N.D. Iowa 2022). This applies even where the complainant is speaking out against an educational institution's treatment of another person. See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 179 (2005)("Where the retaliation occurs because the complainant speaks out about sex discrimination, the 'on the basis of sex' requirement is satisfied. The complainant is himself a victim of discriminatory retaliation, regardless of whether he was the subject of the original complaint.")

Here, while the complaint alleges that Mrs. Sherwood's email "opposed gender-based stereotyping and harassment flowing from the County's portrayal of Mr. Sherwood's 'inappropriate contact' with female students," ECF No. 40 at 102, a plain reading of the email does not show any opposition or complaint actionable under Title IX. ECF No. 2-8. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached ... the exhibit prevails." Shock v. Wells Fargo Bank, N.A., 721 F. Supp. 3d 398, 402 (E.D.N.C. 2024)(quoting Goines v. Vallet Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016)). The email appears to be an attendance note about two of the Sherwood children, with mention of their mental health and safety. It does not reference anything to do with gender-based stereotyping or harassment, nor does it mention Mr. Sherwood's conduct, the investigation into him, nor does it raise any claims of Title IX discrimination. See ECF No. 2-8. This email, as provided, does not amount to an active complaint or an opposition to alleged discrimination on the basis of sex within the meaning of Jackson, 544 U.S. 167. Plaintiffs do not allege facts to support a reasonable inference that this was protected activity under Title IX.

Because Mrs. Sherwood's email, as provided, is not protected activity under Title IX, the failure of Botetourt County Public Schools to conduct a Title IX investigation the

53

attendance note is not retaliatory conduct. Nor was the School Board's vote to terminate Mr. Sherwood from his position "retaliatory escalation." The amended complaint fails to allege facts to support this Title IX claim.

Separately, plaintiffs allege that Sherwood's treatment (presumably, his termination) by the School District was sex-based discrimination in violation of Title IX. As part of that argument, plaintiffs argue that the allegations against Mr. Sherwood were "untethered to evidence of misconduct," that "[t]he Board's and McClung's refusal to provide a name-clearing hearing, while publicly endorsing that narrative, amplified the sex-based bias," and that Sherwood's arrest was made without "sworn probable-cause affidavits." ECF No. 40 at 103. As discussed throughout this opinion, these claims are belied by (1) Sherwood's nolo contendere plea to assault and battery arising from events at his work; (2) no alleged facts supporting an inference that the School Board publicly spoke on Sherwood's charges; and (3) the fact that a sworn probable-cause affidavit was not required in the context of Sherwood's misdemeanor case. See infra. Because this is the only support that plaintiffs offer regarding sex-based discrimination, Count XII is dismissed with respect to the Botetourt County School Board.

### F. Familial Association

In Count XIII, the Sherwoods raise another claim under 42 U.S.C. § 1983, asserting that their Fourteenth Amendment substantive due process rights to familial association were infringed. They raise this claim against defendants Lieutenant Hix, Sheriff Ward, Sgt. Bentley, A.C.A. Lukacs, and C.A. Alexander in their individual capacities, and against the County and School Board under a theory of Monell liability.

Broadly, plaintiffs allege that "[d]efendants, acting under color of state law, engaged in a coordinated course of conduct that foreseeably and directly destroyed the Sherwood' family's emotional, social, and relational integrity. By fabricating criminal charges without probable cause, publishing stigmatizing accusations of sexual misconduct, and orchestrating the termination of Mr. Sherwood's employment, [d]efendants disrupted not only Mr. Sherwood's life but the lives of his wife, Lauren Sherwood, and three daughters: Savannah Beckner, B.M.B., and H.M.B." ECF No. 40 at 106.

Count XIII hinges on many of the same arguments that have been addressed elsewhere in this memorandum opinion. The facts alleged in the amended complaint—and the attached exhibits on which they rely—support a reasonable inference that there was probable cause for Sherwood's arrest. See ECF No. 2-5 (warrants). Thus, plaintiffs' continued assertion that there was no probable cause fails. Similarly, the facts alleged in the complaint support an inference that press coverage of Sherwood's criminal proceedings emphasized that his alleged misconduct was not sexual in nature. ECF No. 40 at 18 (noting that the press release from the Sheriff's Office specified that any touching "did not involve intimate areas"); 56 (C.A. Alexander stating that "there was no evidence to support charges of sexual assault"). Plaintiffs' reference to the publication of "stigmatizing accusations of sexual misconduct" again asks this court to read those statements and conclude the opposite. And while plaintiffs allege that Sherwood's arrest and termination were part of a "coordinated" campaign, ECF No. 40 at 8, 25, 36, 51, 60, et al., the amended complaint simply has not alleged facts to support that conclusion. Count XIII, which depends on those assertions, fails to state a claim.

Plaintiffs further allege the defendants' silence in response to (1) Sherwood's criminal defense counsel's requests for sworn affidavits of probable cause; and (2) Mrs. Sherwood's email to school administrators "requesting safety-related accommodations[;]"[37] "demonstrates deliberate indifference to the Sherwood daughters' safety, emotional wellbeing, and educational environment." ECF No. 40 at 107. To be sure, "the sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution and shielded by the Due Process Clause of the Fourteenth Amendment." Reynolds v. Camp, No. 7:21-CV-00220, 2022 WL 945330, at *6 (W.D. Va. Mar. 29, 2022)(quoting Hodge v. Jones, 31 F.3d 157, 163 (4th Cir. 1994)). Here, plaintiffs allege no facts to support a theory that this right was infringed, only that "[g]overnment actions that 'shock the conscience' or deliberately disrupt family unity violate substantive due process," and that "[d]efendants' conduct—including fabricating criminal charges, suppressing exculpatory evidence, publicizing false accusations of sexual misconduct, and failing to protect the Sherwood daughters from foreseeable treatment— meets and exceeds this standard." ECF No. 40 at 108.

The court acknowledges that these events affected the Sherwood family. But, as written, the amended complaint fails to allege facts to support a reasonable inference that the family's substantive due process rights were violated. Count XIII is dismissed.

### G.    Virginia Civil Conspiracy

In Count XIV, plaintiffs allege pursuant to Virginia Code §§ 18.2-499 and 18.2-500 that defendants Thomas, Hix, Ward, Bentley, Lukacs, and Alexander conspired "to willfully and

---

[37] Plaintiffs allege that Mrs. Sherwood's email stated "that the family's daughters were experiencing harm as a result of the public accusations[.]" ECF No. 40 at 107 (citing ECF No. 2-8). The email, at ECF No. 2-8, does not say this. See infra.

maliciously injure…Sherwood … in his reputation, trade, business, and profession." ECF No. 40 at 110.

"It is well-settled that [the Virginia civil conspiracy statute] applies only 'to business and property interests, not to personal or employment interests.'" Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 321 (4th Cir. 2012)(quoting Andrews v. Ring, 266 Va. 311, 585 S.E.2d 780, 784 (2003)). Sherwood alleges the latter. ECF No. 40 at 112 (alleging "injury to his reputation, trade, business, and profession," specifically via his "loss of employment, diminished earning capacity, severe emotional stress, and long-term reputational damage.") Thus, Count XIV fails to state a claim.

Further, Count XIV expressly relies on Sherwood's arguments related to probable cause, "stigmatizing press releases and media statements," defamation, the coordination of those statements with the school board, malicious prosecution, and the lack of probable cause documentation. For the reasons explained infra, Count XIV fails to state a claim and is dismissed. Further, because these claims of civil conspiracy are predicated on Sherwood's alleged injuries alone, the Sherwood family cannot raise this claim on Sherwood's behalf. This claim is dismissed with respect to plaintiffs Lauren Sherwood, Savannah Beckner, H.B. and B.B.

### H.    Wrongful termination

Next, in Count XV, plaintiffs allege that Sherwood was wrongfully terminated from his position with Botetourt County Public Schools "in violation of the public policy exception recognized in Bowman v. State Bank of Keysville, 229 Va. 534[, 331 S.E. 2d 797] (1985)." ECF No. 40 at 113. Plaintiffs raise this claim against the School Board, alleging that '[t]his

57

termination violated Virginia public policy by being based on the false imputation of criminal conduct." Id.

Under Bowman, the Virginia Supreme Court has recognized an exception to the employment-at-will doctrine where an employer's discharge of an employee violates established Virginia public policy. Bowman, 229 Va. 534 at 540. However, Sherwood does not cite to, and this court has not found, any support for the assertion that there is an established Virginia public policy against "discharging an at-will employee based on a false imputation of criminal conduct." ECF No. 40 at 114.

If there were such a public policy, the amended complaint does not allege facts sufficient to support a reasonable inference that the School Board relied on 'a false imputation of criminal conduct.' Plaintiffs do not allege any statements from the School Board on the reasons for their vote. The only indication in the complaint about the reasoning behind the School Board's termination decision is in the letters from Timothy McClung, which referenced "unprofessionalism when it comes to [Sherwood's] interaction with female students on the school bus." ECF No. 40 at 113 (citing ECF Nos. 2-2, 2-3). This assertion of 'unprofessionalism' cannot reasonably be inferred to be "a false imputation of criminal conduct" where Sherwood alleges that he pled nolo contendere to charges of assault and battery arising from that conduct in the course of his employment. As discussed infra, Sherwood is judicially estopped from pleading that the criminal conduct to which he pled nolo contendere was falsely imputed to him.

58

Count XV does not state a claim and is dismissed. Because the Sherwood family cannot raise this Bowman claim on Sherwood's behalf, this claim is dismissed with respect to plaintiffs Lauren Sherwood, Savannah Beckner, H.B. and B.B.

## I.        Abuse of Process

In Count XVI, the Sherwoods raise an abuse of process claim against defendants A.C.A. Lukacs, C.A. Alexander, Sheriff Ward, and Lieutenant Hix in their individual capacities, presumably brought under Virginia law.

"To establish an abuse of process claim, a plaintiff must prove '(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings.'" Daniel Morgan Graduate Sch. of Nat'l Sec. v. Millis, No. 1:17-CV-00576, 2018 WL 1915928, at *5 (E.D. Va. Apr. 23, 2018)(quoting Donohoe Const. Co., Inc. v. Mount Vernon Associates, 235 Va. 531, 539, 369 S.E. 2d 857, 862 (1988)).

In the amended complaint, plaintiffs allege that "[d]efendants misused the criminal process, specifically the twenty-five arrest warrants, officializing a press release from the Sheriff's Office, the bond conditions, and the subsequent motion practice, for an ulterior purpose." ECF No. 40 at 116 (cleaned up). That ulterior purpose, they argue "was to coerce [Sherwood] into accepting a plea agreement, punish him for asserting his constitutional rights, destroy his reputation, and justify the School Board's termination decision, rather than to secure a conviction based on a lawful finding of probable cause." Id. at 117.

As discussed infra, the facts as alleged and the warrants attached to the amended complaint at ECF No. 2-5 support a determination that probable cause existed where, as here,

59

there is no allegation that an officer misled the magistrate. English, 90 F.4th at 648. The existence of probable cause is wholly inconsistent with plaintiffs' alleged "ulterior motive."

As to this claim, Raymond Sherwood has not sufficiently pled facts in the amended complaint to support an inference that the twenty-five warrants, the motion to revoke bond, and the public statements from the Sheriff's Office and Prosecution were improper. See infra. Again, because the Sherwood family cannot raise this claim on Sherwood's behalf, this fails to state a claim with respect to plaintiffs Lauren Sherwood, Savannah Beckner, H.B. and B.B. Accordingly, Count XVI is dismissed.

### J.    Defamation Per Se and/or Defamation by Implication

The plaintiffs' next three counts raise claims of defamation per se and/or defamation by implication against defendants Thomas (Count XVII), Ward and Bentley (Count XVIII) and Alexander (Count XIX).

Plaintiffs argue that defendants' various statements directly (per se) and impliedly (by implication) defamed Sherwood. Specifically, the Sherwoods allege that Kasey Thomas "falsely reported [to school officials] that [Sherwood] had inappropriately touched minor students on the bus, knowing the conduct did not occur and that video evidence contradicted her claims." ECF No. 40 at 119. Second, plaintiffs allege that Sheriff Ward and Sergeant Bentley "authored, approved, or disseminated" the May 6, 2025, Sheriff's Office Press Release that "expressly and gratuitously associated Mr. Sherwood with accusations of sexual or indecent conduct toward minors." Id. at 122. Even though the statement clarified that "the nature of the reported contact did not meet the statutory criteria for sexual battery," plaintiffs allege that the "unnecessary reference [to the sexual battery statute] introduced sexualized

connotations into the public narrative and falsely suggested that Mr. Sherwood's conduct was of a sexual nature." Id. Third, plaintiffs allege that on October 29, 2025, "[d]efendant Commonwealth's Attorney John Alexander made extrajudicial statements to The Roanoke Times and WDBJ7 News" stating that Sherwood's "touching verged on inappropriate," that "there was no evidence to support charges of sexual assault," and that "another factor taken into account was that Sherwood is no longer working as a school bus driver." Id. at 125. Somehow, "these statements conveyed the false and stigmatizing implication that Mr. Sherwood engaged in sexual or morally inappropriate conduct toward minors—despite the absence of any judicial finding of guilt[.]" Id.

These allegations do not state a claim for defamation per se because the alleged statements are true. Truth is a complete defense to defamation. See, e.g. Alexandria Gazette Corp. v. West, 198 Va. 154, 159, 93 S.E.2d 274, 279 (1956) ("In Virginia both the truth and privilege are complete defenses in bar of any action for defamation, whether it be for common law slander or libel, or for insulting words."). The defendants' statements consistent with the facts alleged in the complaint, and Sherwood is judicially estopped from arguing otherwise.

Under the doctrine of judicial estoppel, all parties—including Sherwood—are precluded from intentionally adopting a position of fact that is inconsistent with a stance taken in a prior litigation that was accepted by the court. Lowery v. Stovall, 92 F.3d 219, 223-226 (1996) (citing John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28-29 (4th Cir. 1995)("The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process."). Judicial estoppel applies when (1) a party is "seeking to adopt a [factual] position that is inconsistent with a stance taken

61

in prior litigation," (2) "the prior inconsistent position [was] accepted by the court," and (3) the party to be estopped "intentionally misled the court to gain unfair advantage." Id., (citing Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 (4th Cir. 1982)(the party must have successfully asserted a prior inconsistent position); Tenneco Chems. v. William T. Burnett & Co., Inc., 691 F.2d 658, 664-65 (4th Cir. 1982)(the position must be one of fact, rather than one of legal theory; and the party must have intentionally misled the court); Teledyne Indus., Inc. v. N.L.R.B., 911 F.2d 1214, 1218 (6th Cir. 1990)(the prior position must have been accepted by the court)).[38]

In his criminal case, Sherwood pled nolo contendere to the assault and battery charge, which amounts to an admission of guilt under Virginia law. See Clauson, 29 Va. App. at 288. He had counsel when he made this plea. ECF No. 2-23 at 5. The Virginia Juvenile & Domestic Relations Court accepted Sherwood's nolo contendere plea, Id. at 1-2. Because of Sherwood's plea agreement with the government, he received the advantage of deferred dismissals on two of the counts against him, and the twenty-three other charges dismissed by nolle prosequi. ECF No. 40 at 25. Now, in his civil case, Sherwood wishes to change his tune and argue that

---

[38] Notably, courts will not apply judicial estoppel "when a party's prior position was based on inadvertence or mistake." John S. Clark Co., 65 F.3d at 28-29. Here, Sherwood alleges no facts in the amended complaint to suggest he had ineffective counsel in his criminal proceedings or that he did not understand the impact of the nolo contendere plea under Virginia law at the time he made it.

When accepting a nolo contendere plea, "[t]he [c]ourt must … determine that such a plea is knowingly and voluntarily made." United States v. Moussaoui, No. CR. 01-455-A, 2002 WL 1587025, at *1 (E.D. Va. July 9, 2002). Virginia courts have held the same. Commonwealth v. Ayala, 99 Va. Cir. 374, 2018 WL 8261344 (2018)(whether a defendant understands the impact of his plea agreement "should be explored with a defendant during the plea colloquy.")

To whatever extent Sherwood implies the argument that his nolo contendere plea was given without understanding its impact—and therefore judicial estoppel would not apply because the plea was unknowingly taken—this federal court must abstain from ruling on the proceedings Sherwood's ongoing state criminal case. See infra. See also Younger, 401 U.S. 37.

the charges against him were false. He is judicially estopped from doing so. See Lowery, 92 F.3d at 225 (finding that a civil plaintiff intentionally misled the court where, "after receiving the benefit of the plea bargain, [he] now wants to have it the other way.")

Sherwood is therefore judicially estopped from arguing that Kasey Thomas's statement to school officials that he "inappropriately touched minor students on the bus" was false. ECF No. 40 at 119. Sherwood pled no contest to assault and battery. Id. at 56. Assault and battery is inappropriate. As pled in the amended complaint, Thomas's statements were not defamatory.

Similarly, plaintiffs' claims of defamation per se with respect to the May 6-7, 2025, statements from the Sheriff's Office and the October 29, 2025, statements to the press from the prosecution fail. The statements from the Sheriff's Office that "the nature of the reported contact did not meet the statutory criteria for sexual battery," that "parents reached out about inappropriate contact" and the incidents "were not hugs or high fives" are true and consistent with the factual allegations of the amended complaint. ECF No. 40 at 122-123. The same is true of the statements from C.A. Alexander that Sherwood's "touching verged on inappropriate," that "there was no evidence to support charges of sexual assault," and that "another factor taken into account was that Sherwood is no longer working as a school bus driver." Id. at 125. Plaintiffs therefore fail to state a claim for defamation per se because the statements at issue are true and consistent with the factual allegations of the amended complaint.

Plaintiffs also assert that the contested statements amount to defamation by implication. "Virginia law makes room for a defamation action based on a statement

63

expressing a defamatory meaning 'not apparent on its face[.]'" Pendleton v. Newsome, 290 Va. 162, 172, 772 S.E.2d 759, 763 (2015). This claim is called defamation by implication, which is actionable where "the circumstances surrounding the making and publication of the statement … would reasonably cause the statement to convey a defamatory meaning to its recipients." Id. At the motion to dismiss stage, "[a]llegations that such circumstances attended the making of the statement, with an explanation of the circumstances and the defamatory meaning allegedly conveyed, will suffice … if the court, in the exercise of its gatekeeping function, deems the alleged meaning to be defamatory." Id. Thus, under Virginia law, for plaintiffs to allege defamation by implication, they must have alleged that circumstances surrounding the making and publication of the statement that would reasonably cause the statement to convey a defamatory meaning to its recipients.

In Counts XVIII and XIX, plaintiffs allege that the statements from the Sheriff's Office in May 2025 and from the prosecution in October 2025 implied that Sherwood had engaged in sexual misconduct. Where Sheriff Ward and Sergeant Bentley expressly clarified that "the nature of the reported contact did not meet the statutory criteria for sexual battery," plaintiffs allege that the implication of those statements is their exact opposite, and that Ward and Bentley "falsely suggested that Mr. Sherwood's conduct was of a sexual nature." ECF No. 40 at 121-122. Plaintiffs also allege when C.A. Alexander stated to the press that that "there was no evidence to support charges of sexual assault," he meant to imply the opposite. Id. at 125. The Sherwoods allege no circumstances surrounding the incident that would reasonably convey to a listener that Ward, Bentley, or Alexander were implying the opposite of what they said.

64

Plaintiffs also raise a defamation by implication claim with respect to defendant Kasey Thomas. In Count XVII, plaintiffs allege that Thomas's report to school administrators "that Plaintiff inappropriately touched minor students on his bus," and that this statement defamed Mr. Sherwood by implication. ECF No. 40 at 119. "[A]ny literal truth," they argue, "was presented in a context that conveyed a false implication of criminal or sexual misconduct." Id. at 119-120. Plaintiffs do not allege further factual circumstances about Thomas's statement or that "context" that would convey sexual misconduct.

However, taking plaintiffs' allegation as true, the court finds that such statement is subject to absolute immunity from tort liability as a statement of public concern under Virginia Code § 8.01-223.2.[39] Concerns about inappropriate touching from a school bus driver—a person in a position of public trust—are surely statements regarding a matter of public concern. See, e.g. Stultz v. Virginia, Dep't of Motor Vehicles, 203 F. Supp. 3d 711, 737 (W.D. Va. 2016), aff'd and remanded sub nom. Supinger v. Holcomb, 717 F. App'x 194 (4th Cir. 2017)("It is well settled that speech that 'seek[s] to bring to light actual or potential wrongdoing

---

[39] Virginia Code § 8.01-223.2 reads:

    A.  A person shall be immune from tort liability if the tort claim is based solely on statements (i) regarding matters of public concern that would be protected under the First Amendment to the Constitution of the United States made by that person that are communicated to a third party, (ii) made at a public hearing before, or otherwise communicated to, the governing body of any locality or other political subdivision, or the boards, commissions, agencies and authorities thereof, and other governing bodies of any local governmental entity concerning matters properly before such body, (iii) made at a Title IX hearing before the applicable tribunal of an institution of higher education, or (iv) made by an employee against an employer where retaliatory action arising from such statements is prohibited by § 40.1-27.3.

    B.  The immunity provided by this section shall not apply to any statements that the declarant knew or should have known were false or were made with reckless disregard for whether they were false.

65

or breach of public trust' involves a matter of public concern"); <u>Harless v. Nicely</u>, 80 Va. App. 678, 693, 900 S.E.2d 503, 511 (2024)("[S]tatements [from employees of a school district] about [a high school football coach]'s alleged recruiting practices and his behavior around student athletes are certainly statements 'regarding matters of public concern that would be protected under the First Amendment.'"). Thomas's alleged report of inappropriate touching on the school bus to school authorities falls within the protection of the statute.

Based on the foregoing analysis, Counts XVII, XVIII and XIX are dismissed with respect to plaintiff Raymond Sherwood.

To whatever extent plaintiffs Lauren Sherwood, Savannah Beckner, H.B. and B.B. seek to assert these defamation claims, the court notes that "Under Virginia common law, a private individual asserting a claim of defamation first must show that the alleged defamatory statements are 'of and concerning' the plaintiff." <u>Vivera Pharms., Inc. v. Gannett Satellite Info. Network, LLC</u>, 113 Va. Cir. 61, 2024 WL 5454693, at *3 (2024). The statements at issue in this case are "of and concerning" Raymond Sherwood only. As such, Counts XVII, XVIII, and XIX are dismissed with respect to his family.

### K.    Civil RICO Placeholder

In Count XX, the Sherwoods "reserve the right to amend this Complaint to assert additional causes of action under the Racketeer Influenced and Corrupt Organizations Act ('RICO') … based on facts reasonably expected to be revealed through discovery." ECF No. 40 at 128.

Because all other counts in this amended complaint fail to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court dismisses Count XX as moot.

66

## VII.    Conclusion

Based on the foregoing, Plaintiffs' motion for a temporary restraining order, ECF No. 4, is **DISMISSED**.

Defendants' motions to quash, ECF Nos. 34, 36, 38, 41, and 44 are **DISMISSED AS MOOT**.

Plaintiffs' motion to amend, ECF No. 93, is **DENIED.**

Defendants' motions to dismiss, ECF Nos. 71, 76, 79, 82, 84 are **GRANTED** as to all counts, I through XX.

Entered:    May 20, 2026

Michael F. Urbanski
U.S. District Judge
2026.05.20 13:52:15
-04'00'

Michael F. Urbanski
Senior United States District Judge